908 F.2d 253
 UNITED STATES of America, Appellee,
v.
Ernest James NORTH, Appellant.
 No. 89-1870.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1989.
Decided April 2, 1990.
Rehearing Denied May 15, 1990.
As Amended July 19, 1990.
 
 John Henry Schlie, Cedar Rapids, Iowa, for appellant.
 Janet L. Petersen, Cedar Rapids, Iowa, for appellee.
 Before LAY, Chief Judge, ARNOLD, Circuit Judge, and LARSON, Senior District Judge.*
 LAY, Chief Judge.
 
 
 1
 Ernest James North was convicted for distributing methamphetamine and cocaine, and for conspiring to distribute and possess the same, and sentenced to 115 months. North challenges certain aspects of the district court's[1] application of the Federal Sentencing Guidelines. We reverse and remand for resentencing.
 
 BACKGROUND
 
 2
 North owned an auto salvage business in Waterloo, Iowa. During the summer of 1988, Charles Murphy began working with North in the business. Murphy had been involved in the distribution of drugs since 1985, and with his involvement in the salvage business began to supply methamphetamine and cocaine to North. On November 18, 1988, the two were charged in a nine-count indictment alleging various drug related offenses and a conspiracy to distribute. Murphy pleaded guilty on January 17, 1989. On January 24, 1989, a five count superseding indictment was returned against North and a co-defendant, Gregory Evans.[2] After a three day jury trial, North was found guilty on all counts.
 
 
 3
 At his sentencing, North was held accountable for thirteen ounces of methamphetamine. The district court took the five ounces of methamphetamine it found North purchased from Murphy during the period of the conspiracy, and added to that the eight ounces of methamphetamine seized from Murphy on the night of Murphy's arrest.[3] Based on North's past dealings with Murphy, the district court found that North was accountable for the "reasonably foreseeable quantities in Murphy's possession."[4] Accordingly, the court set North's Base Offense Level (BOL) at 26. See United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1 (Drug Quantity Table) (Oct.1988).
 
 
 4
 The district court granted North's request for a two level reduction for acceptance of responsibility but enhanced his BOL two levels for having possession of a firearm during the commission of the offense. See, USSG Sec. 2D1.1(b)(1). The district court found the applicable sentencing range to be 92 to 115 months and sentenced North to 115 months. On appeal North claims the district court erred (1) in attributing Murphy's possession of eight ounces of methamphetamine to him in calculating his BOL, (2) in enhancing his BOL for possession of a firearm in the commission of the offense, and (3) for denying his request to consider his mitigating role in the offense.
 
 DISCUSSION
 A. Single or Multiple Conspiracies
 
 5
 North asserts he should not have been held accountable for the eight ounces of methamphetamine Murphy attempted to sell to the confidential informant. Under the Guidelines, North may be held responsible for the eight ounces in Murphy's possession if Murphy's attempted sale (1) was in the furtherance of the conspiracy, and (2) either was known to North or was reasonably foreseeable to him. USSG Sec. 2D1.4, comment. (n. 1).
 
 
 6
 Whether the attempted sale was in the furtherance of the conspiracy depends on whether there was a single conspiracy or whether Murphy was involved in activities separate from his conspiracy with North. A single conspiracy exists where there is one overall agreement to perform various acts intended to accomplish the objectives of the conspiracy. United States v. Jackson, 696 F.2d 578, 582 (8th Cir.1982), cert. denied, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). Thus, the question is whether there was at least an implicit agreement between North and Murphy which included as part of its purpose the sale of drugs by Murphy to other individuals.
 
 
 7
 The government argues that the common purpose of the conspiracy was to distribute drugs in the Northern District of Iowa and that the attempted sale by Murphy was a part of that conspiracy. North argues that the attempted sale by Murphy was not in the furtherance of their conspiracy but instead, was a separate and distinct act detached from North's knowledge or participation.
 
 
 8
 The evidence regarding the scope of the conspiracy does not support the government's position. The evidence supports a finding that the conspiracy involving North had a more limited objective, specific to Murphy and North supplying drugs to each other. Therefore, distribution of drugs by Murphy, of which North had no knowledge, received no benefit, and did not participate, cannot be considered to have been done in the furtherance of their conspiracy. See United States v. Tarantino, 846 F.2d 1384, 1393 (D.C.Cir.) (where conduct of a co-conspirator is unrelated to the aims of the overall conspiracy it may not be attributed to other co-conspirators), cert. denied, --- U.S. ----, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). Although a party to a conspiracy takes a conspiracy as he finds it and need not know of or approve each act of a co-conspirator, it must still be shown that the accused was aware of the nature and scope of the conspiracy and knowingly joined in the overall common scheme. United States v. Zimmerman, 832 F.2d 454, 457-58 (8th Cir.1987).
 
 
 9
 North admits that he knew that Murphy sold drugs to other persons. Simple knowledge that the supplier supplies other persons is not enough, however, to assess all quantities distributed by the supplier to each person who purchased drugs from that supplier. See Pinkerton v. United States, 328 U.S. 640, 647-48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946); Tarantino, 846 F.2d at 1392-93; Jackson, 696 F.2d at 582-83. Murphy's other sales were merely another part of Murphy's distribution practice and we cannot say that every act of distribution taken by Murphy, once North became involved with Murphy, was in the furtherance of their conspiracy.
 
 
 10
 The eight ounces Murphy was attempting to sell were drugs that he had obtained without the aid or assistance of North. The sale was arranged and executed without any knowledge or assistance on the part of North and its success was not necessary or advantageous to North. See United States v. Richerson, 833 F.2d 1147, 1152-54 (5th Cir.1987). There is no connection between the exchanges made between North and Murphy pursuant to their conspiracy, and the attempted sale by Murphy to the confidential informant, other than the fact it was an attempted sale of drugs. The government's suggestion that this is sufficient to find the attempted sale to have been in the furtherance of the conspiracy reaches too far. Accordingly, we vacate the district court's determination of North's BOL because it was based upon an improper quantity of drugs.
 
 B. Possession of a Weapon
 
 11
 North argues that the district court erred in enhancing his sentence for possession of firearms. The Guidelines provide: "If a firearm or other dangerous weapon was possessed during commission of the offense, increase by two levels." USSG Sec. 2D.1(b)(1). The enhancement was based on weapons found in North's home at the time of his arrest, which included (1) a cap and ball pistol, (2) a .410 shotgun, and (3) a .22 caliber rifle. The court found that the weapons fit the definition of a firearm under the guidelines and concluded that North had constructive possession of the three weapons in that he had "knowledge of presence plus control."
 
 
 12
 North argues that more than just "knowledge of presence plus control" is needed for enhancement. Although all three of the weapons in question satisfy the Guideline's definition of a "firearm" under section 2D1.1(b)(1),[5] and were technically in North's possession, see United States v. Jones, 875 F.2d 674, 675-76 (8th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), we find it "clearly improbable that the weapon[s] [were] connected with the offense."[6]
 
 
 13
 The cap and ball pistol is a model of a late nineteenth century Colt revolver. In order to fire the weapon, gun powder and lead balls must be poured into the chamber and a cap placed under the firing hammer. When the hammer is released, it strikes the cap causing a spark. The spark explodes the gun powder which in turn propels the lead balls out of the chamber. An expert opined that the weapon had not been fired in over a year, and a police officer testified that after an extensive search no firing caps were found in the home. While we do not disagree with the district court that this is a firearm for the purposes of section 2D1.1(b)(1), we find the district court to have erroneously concluded that it was not clearly improbable that the weapon was connected with the offense.
 
 
 14
 Also found during the search were a .410 shotgun and .22 caliber rifle. These weapons were found in North's son's room on the floor next to his bed. The .410 was unloaded and the .22 caliber rifle was inoperable after North's son attempted to load it with the wrong ammunition. North's son testified the weapons were his and were used for hunting purposes. He stated the last time his father used these guns was five years earlier when North was teaching him how to clean them.
 
 
 15
 We recognize that the room in which these weapons were found was next to North's room and that the door was open and unlocked, thus allowing access to the weapons by North if the need had arisen. We further acknowledge the district court's reliance on the amount of drug activity that took place in the home. We conclude, however, that this factual circumstance falls within the exception found in Application Note 3, relating to an unloaded hunting rifle in the closet, and warrants a finding that it is clearly improbable the guns were connected with the offense.[7]
 
 CONCLUSION
 
 16
 Because the district court has incorrectly applied the sentencing guidelines, we reverse and remand for resentencing consistent with this opinion.[8]
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa
 
 
 [2]
 The charges included: (1) two counts of distribution of methamphetamine; (2) two counts of distribution of cocaine; and (3) one count of conspiring to distribute and possess cocaine and methamphetamine. The distribution counts were based on four drug transactions occurring between October 6, and November 2, 1988. On two occasions, North sold methamphetamine directly to Guy Eastman, an undercover informant. In two other transactions, North supplied cocaine to the co-defendant, Greg Evans, who in turn sold the drugs to Guy Eastman
 
 
 [3]
 In the early morning of November 8, 1988, Murphy and an associate, Melinda Viers, were arrested when they attempted to sell one-half pound of methamphetamine to a confidential informant. North was arrested at his residence later that morning
 
 
 [4]
 The district court did, however, reject the government's suggestion that North be held responsible for the total quantity of methamphetamine Murphy had distributed since 1985 (estimated to be five or six pounds)
 
 
 [5]
 Section 2D1.1(b)(1) applies to a "firearm or other dangerous weapon." Dangerous weapon is defined as "an instrument capable of inflicting death or serious bodily injury." USSG Sec. 1B1.1, comment. (n. 1(d)). Firearm is defined as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive." USSG Sec. 1B1.1, comment. (n. 1(e))
 
 
 [6]
 Application Note 3 to section 2D1.1(b)(1) reads in pertinent part:
 The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.
 USSG Sec. 2D1.1, comment. (n. 3).
 
 
 [7]
 Application Note 3 requires that the weapon in some sense be related to, or have some connection with, the drug activity of the defendant, so that it is not clearly improbable the weapon was connected to the offense. United States v. Paulino, 887 F.2d 358, 360 (1st Cir.1989); United States v. Gillock, 886 F.2d 220, 223 n. 1 (9th Cir.1989); see United States v. Rush, 890 F.2d 45, 52 (7th Cir.1989); United States v. Green, 889 F.2d 187, 189 (8th Cir.1989); United States v. Koonce, 884 F.2d 349, 353-54 (8th Cir.1989); United States v. Wagner, 884 F.2d 1090, 1098 (8th Cir.1989); United States v. White, 875 F.2d 427, 433 (4th Cir.1989); United States v. Vasquez, 874 F.2d 250, 251 (5th Cir.1989)
 
 
 [8]
 North also urged that his late request for consideration of his mitigating role in the offense was erroneously rejected by the district court. We view North's claim under an abuse of discretion standard and find no error by the district court