UNITED STATES of America

v.

Kathy CARMODY, Jimmy W.
Armstrong, and Jimmy
Wayne Smith.

CR. No. 89-323-N.

United States District Court,
M.D. Alabama, N.D.

Nov. 30, 1990.

D. Broward Segrest, Acting U.S. Atty.,
Steven M. Reynolds, Asst. U.S. Atty. for
U.S.

Milton L. Moss, Robert F. Powers, Jimmy Pool, Darron C. Hendley, Montgomery,
Ala., for defendants.

## ORDER

MYRON H. THOMPSON, District
Judge.

Defendants Kathy Carmody, Jimmy W.
Armstrong, and Jimmy Wayne Smith have
been convicted of various federal offenses
involving the possession or distribution of
methamphetamine, a controlled substance.
In pre-sentence reports, the government
and the United States Probation Office
have recommended that, in calculating each
defendant's base offense level under the
federal sentencing guidelines, the court
should factor in their alleged involvement
in a broad conspiracy to manufacture and
distribute at least three kilograms of methamphetamine. Carmody and Smith have
objected to these portions of their pre-sentence reports, arguing that they should be
held accountable only for a smaller quantity of narcotics with which they were directly involved. For the reasons that follow,
the court concludes that the objections
should be sustained and only an amount of
567 grams should be attributed to each of
these three defendants for the purposes of
determining their sentences.[1]

---

1. Initially, Armstrong also claimed that his sentence should not be calculated on the basis of a quantity of methamphetamine as large as three kilograms. However, Armstrong's attorney orally withdrew this objection at the sentencing hearing in this case on November 14, 1990.

Nevertheless, because the court concludes that Carmody's and Smith's objections to the pre-sentence report should be sustained, the court, as a matter of equity and proportionality among the defendants, also refuses to attribute the three kilogram amount to Armstrong.

## I.

In November 1989, Carmody, Armstrong, and Smith, along with several other defendants, were indicted for conspiracy to manufacture, possess with intent to distribute, and distribute methamphetamine in violation of 21 U.S.C.A. §§ 841(a)(1) and 846.[2] Each of these three defendants was also indicted on a separate count of possession with intent to distribute methamphetamine, in violation of § 841(a)(1).[3] Smith pled guilty to the possession with intent to distribute charge and the government dismissed the conspiracy count against him. At trial, a jury convicted Armstrong on both charges, while Carmody was found guilty on the conspiracy count but received a mistrial on the charge of possession with intent to distribute.[4]

The evidence presented to the court at sentencing paints a picture of at least two conspiracies: one involving the manufacture and distribution of three kilograms or more of methamphetamine by persons other than Carmody, Smith or Armstrong, and another one embracing these three defendants and a smaller quantity of drugs which they themselves received. Ronald Brooks and several other defendants in this case produced large quantities of methamphetamine in a laboratory on Brooks' property in Covington County, Alabama. Brooks supplied methamphetamine to several distributors, including Claude Wright. Wright sold quantities of the drug to Steve Lowery, who in turn distributed it to others, among them, Carmody, Armstrong, and Smith. Lowery testified that he delivered methamphetamine to some combination of these three defendants in Hartford, Alabama on approximately eight occasions.[5] Each time, he supplied at least one ounce of the drug.[6] According to Brooks, after Wright was injured in an automobile accident in 1988, Armstrong and Smith began to purchase methamphetamine directly from him. Brooks stated that he sold a total of at least 12 ounces of methamphetamine to these two defendants.[7] On several of these occasions, Carmody was also present. Furthermore, according to Brooks, all three defendants, to varying degrees, knew that he was manufacturing methamphetamine and were aware of the scope and profitability of his operations.

The government now alleges that Brooks manufactured at least three kilograms of methamphetamine during the period of the conspiracy charged in the indictment. The government and the United States Probation Office have recommended to the court that because Carmody, Armstrong, and Smith knew or should have known the quantity of methamphetamine that Brooks was producing and distributing, this three kilogram amount should be ascribed to the defendants for the purposes of calculating their base offense levels under the sentencing guidelines. However, the court finds that none of the three defendants are accountable, under the sentencing guidelines, for any conduct beyond that involving the

---

**2.** The indictment did not indicate what amount of methamphetamine was involved in the conspiracy.

**3.** The indictment charged Carmody with possessing two ounces, and Armstrong and Smith each with possession of one ounce.

**4.** The government acknowledges that at trial, the court instructed the jury that they could find Carmody and Armstrong guilty on the conspiracy count if they found the defendants had conspired for any one of the purposes set forth in the indictment—in other words, to manufacture methamphetamine, possess methamphetamine with the intent to distribute it, *or* distribute it. Moreover, the jury verdict did not indicate what amount of methamphetamine was involved in the conspiracy for which the jury convicted Carmody and Armstrong.

**5.** Lowery indicated that he gave methamphetamine to either Smith or Armstrong on several occasions. He also stated that on at least three or four of his visits to Hartford, Carmody was present, and at least one time he personally delivered drugs to her.

**6.** The court was presented with evidence that one ounce of methamphetamine has a "street value" of more than $1,000, and represents an amount consistent with distribution rather than merely personal use.

**7.** Armstrong and Smith often obtained methamphetamine from Brooks "on credit," and paid for it at a later date.

20 ounces—567 grams [8]—of methamphetamine that they received from Lowery and Brooks.

## II.

One factor in determining a convicted defendant's sentence under the sentencing guidelines is his base offense level. The guidelines instruct that a defendant's base offense level should be calculated so as to take account of all conduct "relevant" to the offense of conviction. U.S.S.G. § 1B1.3. Such relevant conduct must be proved by a "preponderance of the evidence," *United States v. Ignancio Munio,* 909 F.2d 436, 439 (11th Cir.1990) (per curiam), but is not limited to those acts or offenses of which a defendant has been convicted. § 1B1.3, Application Note 2.[9]

The sentencing guidelines set forth two types of relevant conduct potentially applicable to these three defendants. First, § 1B1.3(a)(1) provides that a defendant's base offense level shall be determined on the basis of "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction ... or that otherwise were in furtherance of that offense." Thus, according to the commentary to this guideline, a defendant may be held accountable for conduct "in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Conduct may not be factored into a defendant's base offense level "where it is established that [it] was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake." § 1B1.3, Application Note 1.[10]

Although § 1B1.3(a)(2) uses language different from (a)(1) to define a second type of relevant conduct for which defendants may be held accountable under the sentencing guidelines, the two subsections ultimately require essentially the same analysis, at least for the purposes of this case. Section 1B1.3(a)(2) provides that a defendant's sentence may be calculated on the basis of "all ... acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." The commentary to this guideline specifically instructs that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." § 1B1.3, Background.

■ The government has gone to great lengths to prove that Carmody, Armstrong, and Smith all knew or should have known that Brooks and others were producing and

---

**8.** One ounce is equal to 28.35 grams. *See* U.S.S.G. § 2D1.1, Measurement Conversion Table.

**9.** The court notes that it has relied in its analysis on the November 1990 version of § 1B1.3 and its commentary, rather than the one in effect at the time of the defendants' offenses. However, the Eleventh Circuit has indicated that the "more detailed version of 1B1.3 ... does not reflect a change in the substance of the section but was designed to clarify and restate the intent of the original." *United States v. Castellanos,* 904 F.2d 1490, 1494 n. 7 (11th Cir.1990). Moreover, because the amended guideline and commentary do not operate to the defendants' detriment, there is no *ex post facto* obstacle to making use of them in this case. *See United States v. Marin,* 916 F.2d 1536, 1538 n. 4 (11th Cir.1990).

**10.** Application Note 1 in the commentary to § 1B1.3 also includes a section entitled, "Illustrations of Conduct for Which the Defendant is Accountable." Paragraph (e) of this section states:

> Defendants H and I engaged in an ongoing marihuana importation conspiracy in which Defendant J was hired only to help off-load a single shipment. Defendants H, I, and J are included in a single count charging conspiracy to import marihuana. For the purposes of determining the offense level under this guideline, Defendant J is accountable for the entire single shipment of marihuana he conspired to help import and any acts or omissions in furtherance of the importation that were reasonable foreseeable. He is not accountable for prior or subsequent shipments of marihuana imported by Defendants H or I if those acts were beyond the scope of, and not reasonably foreseeable in connection with, the criminal activity he agreed to undertake with Defendants H and I (*i.e.* the importation of the single shipment of marihuana).

**920**

distributing large quantities of methamphetamine. However, under both prongs of § 1B1.3, a defendant may not be held accountable for conduct—or, as in this case, quantities of drugs—on the basis of mere foreseeability. Indeed, if this were true, all the drugs sold by a dealer could be attributed to any and all of his customers, for a person who purchases narcotics should reasonably foresee that the dealer is likely also selling to others.[11] Rather, under § 1B1.3(a)(1), the activity must be reasonably foreseeable *"in connection with the criminal activity the defendant agreed to jointly undertake"* in order for the sentencing judge to ascribe it to the defendant. § 1B1.3, Application Note 1 (emphasis added). Similarly, the other language used in § 1B1.3, Application Note 1, and § 1B1.3(a)(2)—"within the scope of the defendant's agreement" and "part of the same course of conduct or common scheme or plan"—also indicates a standard for determining when conduct may be factored into a defendant's sentence that is more restrictive than the "foreseeability" test posited by the government.

Although none of the Eleventh Circuit's decisions on the issue of what quantities of drugs may be included when calculating an offense level has addressed whether a defendant may be held accountable under § 1B1.3 for additional amounts of drugs based on mere foreseeability, the Fifth and Eighth Circuits have refused to hold defendants accountable under such circumstances. In *United States v. North*, 900 F.2d 131 (8th Cir.1990), the defendant had purchased five ounces of methamphetamine from an individual named Murphy. Another eight ounces had been seized from Murphy on the night of his arrest. North was convicted of various drug related offenses and of conspiring to possess methamphetamine. Based on "North's past dealings with Murphy, the district court

found that North was accountable for the 'reasonably foreseeable quantities in Murphy's possession,'" and calculated his base offense level using the total quantity of 13 ounces. *Id.* at 133. The Eighth Circuit framed the dispositive question as "whether there was at least an implicit agreement between North and Murphy which included as part of its purpose the sale of drugs by Murphy to other individuals." *Id.* The Court reversed, explaining that although "North admits that he knew that Murphy sold drugs to other persons," *id.* at 134, "Simple knowledge that the supplier supplies other persons is not enough ... to assess all quantities distributed by the supplier to each person who purchased drugs from that supplier." *Id.* The court found that North's conspiracy with Murphy had a "limited objective, specific to [their] supplying drugs to each other," that Murphy had obtained the drugs seized from him "without the aid or assistance of North," and that the success of his attempts to peddle these drugs neither involved nor were "necessary or advantageous" to North. *Id.* at 133–34.

Similarly, in *United States v. Rivera*, 898 F.2d 442 (5th Cir.1990), the Fifth Circuit found that the offense level of a defendant who had been convicted of distributing heroin but also indicted for conspiracy to distribute heroin should not have been calculated so as to include narcotics sales made by his co-defendants. The court found that the defendant had an agreement with the organizer of a drug ring to distribute heroin, but that there was not sufficient evidence of a "joint undertaking or plan" linking the defendant to the heroin sales made by his co-defendants, although they were also supplied by the organizer and sold drugs from the same house as the defendant. *Id.* at 445–446.

---

11. Moreover, such an interpretation flies in the face of the "illustration" in the commentary to § 1B1.3, Application Note 1, Paragraph (e). Here, the sentencing commission was careful to distinguish those cases in which a defendant who "off-load[s] a single shipment" of marijuana would be responsible for "prior or subsequent shipments," from those cases in which he would be accountable only for the drugs contained in the single shipment with which he was involved. Because it is safe to say that *any* defendant in the situation described in this illustration should know that his fellow defendants may well attempt to smuggle in more drugs in the future, the mere "foreseeability" test suggested by the government in this case conflicts with the narrower standard embodied in the illustration. *See* note 10, *supra*.

As in *North* and *Rivera*, the government in this case has simply not demonstrated the necessary connection between Carmody, Armstrong, and Smith, and the methamphetamine produced by Brooks which he did *not* distribute to these three defendants, so as to permit the court to attribute these additional quantities of drugs to the defendants for the purposes of sentencing.[12] The testimony of Brooks and Lowery, coupled with the fact that both Armstrong and Carmody were convicted of engaging in a drug conspiracy, convinces the court, and the court finds, that Armstrong, Carmody, and Smith conspired to possess with intent to distribute the 567 grams of methamphetamine that they received from Lowery and Brooks.[13] However, the government has offered no proof of any criminal activity or agreement to engage in criminal activity by Carmody, Armstrong, *or* Smith, that extends beyond this amount. Specifically, the court finds that none of these three defendants ever profited from or assisted Brooks in any way in the manufacture or distribution of those quantities of methamphetamine which they themselves did not receive.[14]

The court further finds that Carmody, Armstrong, and Smith never reached an agreement with Brooks regarding such additional drugs.[15] Therefore, the court concludes that the three defendants may only be held accountable for the 567 grams of methamphetamine that they actually received from Brooks and Lowery.[16]

### III.

Accordingly, it is the ORDER, JUDG-MENT, and DECREE of the court:

(1) That the objections of defendants Kathy Carmody, Jimmy W. Armstrong, and Jimmy Wayne Smith, to the recommendations in their pre-sentence reports that their base offense levels under the federal sentencing guidelines be calculated on the basis of a quantity of three kilograms of methamphetamine, be and they are hereby sustained;

(2) That only an amount of 567 grams of methamphetamine shall be attributed to each of these three defendants for the purposes of determining their sentences; and

(3) That the United States Probation Office is DIRECTED to rely on this figure in

---

**12.** *Compare United States v. Alston*, 895 F.2d 1362, 1371 (11th Cir.1990) (defendant "was involved in a three-kilogram conspiracy" and thus "district court was correct in considering the total quantity of cocaine involved in the 'same course of conduct or common scheme or plan as the [conspiracy] offense of conviction' "); *United States v. Wilson*, 884 F.2d 1355 (11th Cir.1989) (defendant's base offense level calculated based on total quantity of cocaine involved in distribution conspiracy between defendant and co-defendants despite smaller amount actually seized).

**13.** Carmody has argued that not all of the 567 grams should be attributed to her, since most or all of it was actually purchased by and delivered to Armstrong or Smith. However, Carmody's conspiracy conviction and testimony at sentencing that she was present and played more than a bystander role in several of the transactions, together provide an ample basis for ascribing to her all of the methamphetamine delivered to Armstrong and Smith by Brooks and Lowery.

**14.** Thus, it is also irrelevant whether these three defendants used all of the methamphetamine they received from Brooks and Lowery, or instead sold some of it to others; either way, they

are responsible only for the drugs with which they were involved.

**15.** This is borne out by Brooks's testimony that his "agreement" with Armstrong and Smith was simply for them to purchase methamphetamine from him. Of course, any additional drugs manufactured by Brooks which the three defendants did not actually receive might still be attributable to them had the government offered proof that Brooks produced such drugs for, and planned to distribute them to, Carmody, Armstrong, and Smith, pursuant to the ongoing seller-buyer relationship between Brooks and the three defendants. However, when Brooks was arrested and his "laboratory" searched, the police seized only a small amount of methamphetamine, and the court does not have before it any evidence concerning these drugs.

**16.** The court notes, however, that while the defendants' base offense levels will be lower when calculated on the basis of 567 grams than they were when a figure of 3 kilograms was used, the government and the probation office may wish to reconsider their recommendation that Carmody, Armstrong, and Smith receive a downward adjustment in their base offense levels by virtue of their "minimal participation" in the criminal activity for which they are to be sentenced.

completing a revised pre-sentence report for each of these three defendants.