**UNITED STATES of America, Appellee,**

v.

**Francisco GRANADOS, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Mark E. MORA, Appellant.**

**Nos. 90–2940, 90–3012.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1991.
Decided April 15, 1992.

Alan G. Stoler, Omaha, Neb., argued, for appellant Granados.

Emil M. Fabian III, Omaha, Neb., argued, for appellant Mora.

Paul D. Boeshart, Lincoln, Neb., argued (Ronald D. Lahners and Paul D. Boeshart on the brief), for appellee.

Before LAY,* Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

LAY, Chief Judge.

Francisco Granados and Mark E. Mora pleaded guilty to conspiracy to possess with intent to distribute cocaine, a schedule II, controlled substance, in violation of 21 U.S.C. § 846 (1981 and Supp.1990), and knowing and intentional possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (1981 and Supp.1990), for which they were sentenced to 175 months and 180 months, respectively. They now appeal those sentences.

BACKGROUND

The record reveals that the two defendants were involved in a cocaine distribution scheme to distribute cocaine. In furtherance of the conspiracy, numerous trips to California were made by Mora, Funk, Clifford, Baratta, Kress and other conspirators. The conspirators pooled their money and purchased cocaine, which they then brought back to Nebraska and sold. Mora sold some of his portion of the cocaine to his cousin Francisco Granados, who in turn sold that cocaine to others. Granados also purchased cocaine from Clifford. Granados was aware of the trips to California and their general purpose. Kress acted merely as a mule or courier and did not

---

* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

purchase or sell cocaine. Kress served as a "runner," traveling between Omaha and Lincoln, Nebraska, on several occasions to transport money and cocaine from Mora to Funk. A wiretap on conspirator Funk's telephone revealed that on November 27, 1987, Mora called Funk's home to ask when Funk would be returning from California. Funk was in California purchasing more cocaine at the time; Funk returned to Nebraska with cocaine and was arrested on December 1, 1987.

Mora and Granados were later arrested and charged in a three count indictment with conspiracy to distribute cocaine; two other charges were dropped as part of the plea agreements. Granados pleaded guilty to intent to distribute more than 3.5 kilograms but less than 5 kilograms of cocaine. He also testified that he collected guns, which he kept at his home. Mora pleaded guilty to intent to distribute more than 5 but less than 15 kilograms of cocaine. The court determined that Granados had a level III criminal history and Mora a level IV criminal history. They each received a two level downward adjustment for acceptance of responsibility. Under the guidelines, the district court sentenced Granados to 175 months and Mora to 180 months.

A. Granados

Granados seeks a review of the sentence imposed, claiming that the trial court 1) incorrectly determined the amount of cocaine involved, 2) incorrectly enhanced his sentence for an alleged use of a firearm during the commission of the conspiracy, and 3) erred in imposing disparate sentences on Granados and his co-conspirator Kress.

1. *The Base Offense Level*

■ In calculating Granados' base offense level, the probation officer included the amount of cocaine attributable to the conspiracy, more than 5 and less than 15 kilograms of cocaine. Although Granados raised other objections to the information contained in the presentence report (PSR), he did not object to this finding. He was assigned a level four criminal history and

was granted a two level reduction for acceptance of responsibility. The district court, upon review of the PSR, determined that Granados should be assigned a level III rather than level IV criminal history. Granados challenges his sentencing for involvement in a conspiracy to distribute in excess of 5 kilograms of cocaine, claiming that the amount involved in the conspiracy was not reasonably foreseeable to him. We disagree.

■ Whether uncharged drugs are part of a common scheme or plan is a factual finding which will be disturbed on appeal only if clearly erroneous. *See* 18 U.S.C. § 3742(e)(4) (Supp.1991); *United States v. Pou,* 953 F.2d 363 (8th Cir.1992); *United States v. Watts,* 950 F.2d 508 (8th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1276, 117 L.Ed.2d 502 (1992); *United States v. Johnson,* 906 F.2d 1285 (8th Cir. 1990); *United States v. Hoelscher,* 914 F.2d 1527 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1990).

■ Under the guidelines, Granados may be held responsible for the amount of cocaine involved in the conspiracy if his co-conspirator's sales were in furtherance of the conspiracy and were either known by or reasonably foreseeable to him. U.S.S.G. § 2D1.4, comment (n.1). A person's base offense level is to be determined on the basis of "all acts and omissions committed or aided and abetted by the defendant, or ... that occurred during the commission of the offense of conviction, in preparation for that offense, ... or that otherwise were in furtherance of that offense." U.S.S.G. § 1B1.3(a)(1) (Amd. Nov. 1, 1990). A conspiracy exists when persons agree to perform various acts to accomplish a specific objective or objectives. *United States v. Jackson,* 696 F.2d 578, 582 (8th Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). Granados admitted that he and Mora signed an agreement to distribute drugs. Thus the only question regarding the amount of cocaine for which Granados was held accountable is whether Mora's other sales were either known to or were reasonably foreseeable by Granados.

■ Although a party to a conspiracy takes the conspiracy as he finds it and need not know or approve of each act of his co-conspirator, it must be shown that "the accused was aware of the nature and scope of the conspiracy and knowingly joined in the overall scheme." *Id.* Granados relies on *United States v. North,* 900 F.2d 131 (8th Cir.1990), to support his contention that the amount of cocaine sold by Mora was not reasonably foreseeable by him. In *North,* this court determined that the district court had erred in enhancing the defendant's sentence for distributing narcotics by the amount of methamphetamine seized from a co-conspirator. In reversing, we held that distribution of drugs by North's co-conspirator, of which North had "no knowledge, received no benefit, and did not participate, [could not] be considered to have been done in furtherance of their conspiracy." 900 F.2d at 133.

Unlike North, Granados admitted to participating in the conspiracy, was aware of the nature and scope of the conspiracy, and knowingly joined in the overall common scheme. Granados testified that he suspected the origin of the cocaine. (PSR ¶ 57). An uncontradicted, unchallenged statement in his PSR states that "between the second and third [cocaine buying] trip[s], Granados, Mora and Clifford met in Granados' garage. Granados was working on his motorcycle and was told of the next California trip. Granados then asked when the cocaine would be available as he had customers who were ready to purchase from him." PSR ¶ 17. According to another unchallenged statement in Granados' PSR, on another occasion, Granados met Clifford at an Omaha bar and "discussed the California trips. Granados wanted Clifford to sell him cocaine because the cocaine he was obtaining from Mora was too expensive. Clifford received $6000 from Granados approximately four to six days later after the quarter pound [of cocaine] was delivered." PSR ¶ 27. Granados met several times with both Mora and Clifford and purchased cocaine from each of them on numerous occasions.

The facts in the instant case establish that a close working relationship existed among the co-defendants. In light of the testimony, uncontested PSR statements,[1] and other evidence presented to the district court, we cannot find that the district court's sentencing Granados on the basis of more than 5 and less than 15 kilograms of cocaine was clearly erroneous.

■ 2. Granados contends that the district court committed reversible error in determining from the evidence that he possessed a firearm during the conspiracy. He claims that the evidence was insufficient and could not reasonably be considered reliable. The presentence report contained information based on an interview with John R. McGill that Granados threatened to shoot McGill's foot off if McGill did not pay a drug debt he owed Granados. In a later affidavit, McGill denied that Granados had threatened him with a gun when he came to collect a drug debt in February of 1989. Granados claims that the district court erroneously relied upon the presentence investigation statements concerning the threat and ignored McGill's subsequent denial that the February event occurred.

■ Granados specifically objects to the district court's alleged reliance upon the PSR statement that Granados threatened McGill with a gun in an attempt to collect a drug debt. We have observed that "[t]he presentence report is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact." *United States v. Streeter,* 907 F.2d 781, 791–92 (8th Cir.1990). Once a defendant objects to a factual allegation in the presentence report, the court must make "i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." *See* Fed.R.Crim.P. 32(c)(3)(D). If the former course is chosen, this court has held that "the government must introduce evidence sufficient to convince the Court by a

---

1. "In the absence of objection alerting the Court to the need for a specific finding, the Court may rely on the presentence report." *United States v. Streeter,* 907 F.2d 781, 792 (8th Cir.1990).

preponderance of the evidence that the fact in question exists." *Streeter*, 907 F.2d at 792. Granados specifically objected to the statement that he had threatened to shoot McGill. Once alerted to Granados' objections, the court had an obligation to make specific factual findings based on the preponderance of the evidence regarding the disputed facts. *Id.*[2] The district court did so, and based its finding that Granados used a firearm in furtherance of the conspiracy on the plea and sentencing hearings testimony as well as the PSRs and affidavits submitted. In determining the relevant facts, the sentencing court is not restricted to considering information that would be admissible at trial. 18 U.S.C. § 3661 (1988 and Supp.1990). Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." *United States v. Marshall*, 519 F.Supp. 751 (Wis.1981), aff'd, 719 F.2d 887 (7th Cir.1982). Even reliable hearsay evidence may be considered. *United States v. Weston*, 448 F.2d 626 (9th Cir.1971). Use of a firearm need not be established beyond a reasonable doubt for a sentence enhancement; a preponderance of the evidence is sufficient. *United States v. Dawn*, 897 F.2d 1444 (8th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990). On the basis of the record as a whole, the court reasonably concluded that at a point in the conspiracy Granados had threatened McGill with a nine-millimeter gun in an attempt to collect a drug debt.

▮▮▮ Furthermore, even if, arguendo, it was error for the district court to find that Granados threatened McGill with a gun, that error would be harmless. Granados himself admitted to owning a nine-millimeter semi-automatic handgun during 1987 and to collecting guns during the conspiracy. He stated that, on one occasion when McGill came to his house to purchase

cocaine, McGill noticed Granados' displayed gun collection. 18 U.S.C.A. § 924(c)(1) (Supp.1991) states, in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced....

*Id.* It is not necessary for conviction under 18 U.S.C. § 924(c)(1) that the weapon involved actually be used to harm, intimidate, or threaten others. Noting the need of drug dealers for guns and other weapons to protect their operations, this court has made clear on several occasions that the mere presence and ready availability of a firearm where drugs are dealt constitutes the "use" of a gun during a narcotics offense. *See United States v. Pou*, 953 F.2d 363 (8th Cir.1992) (the fact that firearms were seen in Pou's apartment, the same apartment from which cocaine was distributed, more than adequately demonstrated the connection between the weapons and Pou's drug offenses); *cf. United States v. Boyd*, 885 F.2d 246 (5th Cir.1989) (evidence was sufficient to demonstrate that the defendant carried a shotgun during course of conspiracy to manufacture crack, and that weapon was involved in overall drug trafficking activity, though there was no evidence that the weapon was actually used to harm, intimidate or threaten others). It is enough that a firearm be present at the drug trafficking scene; the weapon could be used to facilitate the conspiracy. *See United States v. Matra*, 841 F.2d 837, 842 (8th Cir.1988). In the instant case, a preponderance of the evidence supported the court's finding that Granados participated in a narcotics distribution conspiracy, that at least one gun was present at a point during the conspiracy, and that the gun was in Granados' presence and control.

---

**2.** When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information ... provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1, 3(a). This is necessary because significant deprivations of liberty can arise as a result of a judge's factual findings.

Therefore, Granados "used" a gun in furtherance of his narcotics conspiracy. The two level enhancement was correct.[3]

## B. Mora

### 1. *Applicability of the Guidelines*

■ Mora claims that the district court should not have sentenced him under the sentencing guidelines. The law is clear that, since conspiracy is a continuing act, it is no violation of the ex post facto prohibition to punish a defendant for amounts involved in a conspiracy begun before the effective date of the guidelines and continued afterwards. *United States v. Allen*, 886 F.2d 143, 145–46 (8th Cir.1989). The burden of proving withdrawal from the conspiracy rests upon the defendant. *United States v. Boyd*, 610 F.2d 521, 528 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). A defendant "must take affirmative action, either making a clean breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach co-conspirators." *Id.* at 528. Mere cessation of activities is not enough.

■ Mora did not present any evidence that he took affirmative action communicating his separation from the conspiracy. To the contrary, the district court was only presented with evidence and testimony affirming that Mora was actively involved in the conspiracy after the effective date of the sentencing guidelines, November 1, 1987. The government adduced a tape recording of a telephone call made by Mora on November 1, 1987, to co-conspirator Funk's apartment. In that telephone call Mora asked Funk's sister when Funk would be returning from California. As California was the location of the conspirators' large purchases of cocaine and as Funk returned from California with cocaine, it was reasonable for the district court to conclude that Mora's November 1, 1987, telephone call to Funk was in furtherance of the conspiracy. Also, the testimony of co-conspirator Baratta directly links Mora to the conspiracy as late as October 1988. The sentencing guidelines were clearly applicable.

### 2. *Excessive Fine*

■ Mora asserts that the $20,000 fine assessed against him is excessive. Review of criminal fines is governed by the excessive fines claims of the eighth amendment.[4] *See Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262, 109 S.Ct. 2909, 2913, 106 L.Ed.2d 219 (1989) (excessive fines clause found "to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments").

Guideline § 5E1.2 identifies several factors that sentencing courts must consider when imposing a fine:

(d) In determining the amount of the fine, the court *shall* consider:

(1) the need for the combined sentence to reflect the seriousness of the offense ... to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) ... defendant's ability to pay the fine ... in light of his earning capacity and financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense; and

(7) any other pertinent equitable considerations.

(e) The amount of the fine should always be sufficient to ensure that the fine, tak-

---

**3.** Granados' claim that his sentence is impermissibly disparate from that of his co-conspirator Kress is analyzed in the section dealing with defendant Mora's disparate sentencing claim.

**4.** The eighth amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII.

en together with other sanctions imposed, is punitive.

U.S.S.G. § 5E1.2 (emphasis added).

■■■ According to the PSR, Mora graduated from high school and attended vocational school for electronics and bookkeeping, but never finished either course of study. He apparently was self-employed for a time as an automobile mechanic. Prior to that he worked as a machine operator, bus boy, and paper boy. He also played in a rock band. The PSR indicates that Mora owns a home, but his equity in that home is unknown. No other assets are specifically listed in the PSR nor was any independent evidence of Mora's assets ever introduced into the record. It is an incorrect application of the guidelines to impose a fine that a defendant has little chance of paying. *See United States v. Walker*, 900 F.2d 1201, 1206 (8th Cir.1990); *cf. United States v. Mitchell*, 893 F.2d 935, 936 (8th Cir. 1990). A determination that the defendant has sufficient assets to pay the fine must be based on more than a statement to that effect in the PSR. *Walker* at 1207 n. 6. The district court failed to make specific findings as to each of those factors. We therefore remand this issue to the district court and instruct it to make specific findings of fact concerning whether Mora has assets sufficient to pay or work off the $20,000 fine assessed.[5]

### 3. *Disparate Sentences*

■■■ Mora and Granados each contend that the district court erred by imposing on him a sentence impermissibly disparate from that imposed on co-conspirator Kress. Kress was sentenced to eight years in prison. We disagree.

This court's review of a sentence imposed under the guidelines is limited to determining whether the district court improperly applied the sentencing guidelines. *See* 18 U.S.C. § 3742(a)(2) (1988). We must accept the findings of the district court unless they are clearly erroneous, 18 U.S.C. § 3742(e) (1988), and affirm the sentence if the facts were properly applied to the guidelines. *See United States v. Brett*,

872 F.2d 1365, 1371 (8th Cir.), *cert. denied sub nom. Grey v. United States*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).

■■■ A defendant cannot rely upon his co-defendant's sentence as a yardstick for his own; a sentence is not disproportionate just because it exceeds a co-defendant's sentence. *See United States v. Lindell*, 881 F.2d 1313, 1324–25 (5th Cir.1989) (co-defendant's cooperation with the government could have played a legitimate role in lesser sentences), *cert. denied*, 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990); *United States v. Wayne*, 903 F.2d 1188, 1198 (8th Cir.1990) (defendant's greater role in the offense justified the harsher sentence). Furthermore, "[a] sentencing court is not required to enunciate the reasons underlying its decision ... a judge is to be accorded wide discretion in determining an appropriate sentence." *United States v. Garcia*, 617 F.2d 1176, 1178 (5th Cir.), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980), quoting *United States v. Hayes*, 589 F.2d 811, 826–27 (5th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). Thus, although the sentencing guidelines were conceived to avoid disparate sentences for the same criminal activity, disparity will always exist so long as sentences are based upon the specific facts of each individual defendant's case. Whether a defendant is sentenced under the sentencing guidelines or prior existing standards, it is clear that the trial court is not obliged to consider the sentence of a co-defendant when imposing sentence on a defendant. *United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir.1985).

In *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949), Justice Black observed that the "prevalent modern philosophy of penology [is] that the punishment should fit the offender and not merely the crime. The belief no longer prevails that every offense in a like legal category calls for an identical punishment...." Mora, Granados, and Kress each pleaded guilty to charges in-

---

**5.** This fine is well within the range for an offense level 32 to 42: $17,500 to $175,000.

volving a substantial amount of cocaine. Mora, who had a criminal history of IV, was identified as an organizer of the conspiracy. Granados, who had a criminal history of level III, was determined to be, not an organizer of, but a significant participant in the conspiracy. In contrast, Kress, who withdrew from the conspiracy on October 30, 1987, was described by Mora himself as a "mule" or "runner," a courier or messenger for the conspiracy. Granados stated that he believed that Kress was unaware that Granados sold drugs. The district court reasonably noted these facts in its sentencing memoranda, and we cannot say that these facts are clearly erroneous. The defendants' sentences are disparate, properly reflecting their individual criminal histories and degrees of involvement in the conspiracy.

We affirm the sentences of defendants Granados and Mora and remand for specific findings of fact concerning Mora's ability to pay the $20,000 fine assessed.