

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2008

# USA v. Murillo

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1963

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Murillo" (2008). *2008 Decisions.* Paper 858.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/858

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 07-1963

———

UNITED STATES OF AMERICA

v.

RONAL MURILLO a/k/a ABEJON

Ronal Murillo,
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cr-00700-2)
District Judge: Honorable Dennis M. Cavanaugh

———

Argued June 24, 2008

Before: SLOVITER, BARRY, and ROTH, Circuit Judges

(Filed July 10, 2008)

———

John P. McGovern   (Argued)
Newark, N.J.  07102

    Attorney for Appellant

George S. Leone
Steven G. Sanders   (Argued)
Office of United States Attorney
Newark, N.J.  07102

       Attorneys for Appellee

____

OPINION

____

SLOVITER, <u>Circuit Judge</u>.

**I.**

Appellant Ronal Murillo is a native and citizen of El Salvador who entered the United States illegally in 1989.  Murillo obtained Employment Authorization Documents ("EADs") covering the period between 1991 and September 2004, but did not have a valid EAD between April and June 2005, the time period relevant to this case.  Murillo lived with his girlfriend, Ana Guevara, a native and citizen of El Salvador, who also did not have a valid EAD during the relevant time period.

Murillo's brother, Julio, brokered the purchase of false immigration and identification documents for customers who paid him to buy them from his sources.  In May 2005, Murillo discussed with Julio his desire to obtain a Social Security card from Hector Martinez to replace the card Murillo had lost.  In a court-authorized wiretap recording of Julio's telephone conversations, Murillo said he would call Martinez "to see if he can make me up one . . . [j]ust like the other one.  I also have to get one that I asked him to do for Ana."  Supp. App. at 179-80.  When Martinez could not obtain the

2

requested card at that time, Julio told Murillo to try to acquire the card from another source, Alan, whom Murillo "kn[e]w . . . better" than Julio. Supp. App. at 190. Although Murillo could not reach Alan, Julio spoke to Alan's friend who stated that he could get him "a pink one" (a permanent resident card) later. Supp. App. at 211.

On June 16, 2005, Murillo, his brother Julio, and Martinez were arrested. Murillo executed a waiver of his Miranda rights, and told Immigration and Customs Enforcement ("ICE") officials that he did not create false documents but knew individuals who did, including Martinez. He admitted that he sought a fraudulent Social Security card for himself, but that he never received it. Agents also searched Martinez's apartment and found a paper cutter, card stock, a laminating machine, a typewriter ribbon, passport photos, an alien's resident card, and a Social Security card, all indicia of a project to create identification cards. The typewriter ribbon contained 119 different sets of names, Social Security numbers, and alien numbers, none of which were legitimate. Murillo's name was not included on the ribbon.

On September 26, 2005, Murillo and his two co-defendants were indicted for conspiracy to transfer false identification documents, in violation of 18 U.S.C. § 1028. Murillo's co-defendants entered guilty pleas and cooperated with the authorities. In contrast, Murillo proceeded to trial, and testified in his own defense. The jury found him guilty. Murillo was sentenced to thirty-five months imprisonment followed by three years supervised release. Murillo has served his prison sentence and thus the only remaining

issue is the length of his supervised release term.

## II.

Although in his brief to this court Murillo raised multiple issues on appeal, at oral argument before us his counsel pressed only the issue relating to Murillo's sentencing. Thus, we will consider the other issues waived.[1]

Murillo contends that the District Court erred when it enhanced Murillo's base offense level on the ground that the offense involved 100 or more fraudulent documents. See U.S.S.G. § 2L2.1(b)(2)(C). The District Court reasoned that Murillo was part of "a jointly undertaken criminal activity," and that therefore his offense level was to be

---

[1]In any event, Murillo's claim that the District Court abused its discretion in denying his request for an interpreter during his trial fails because the record suggests that Murillo did not qualify for an interpreter under the Court Interpreters Act, 28 U.S.C. § 1827. We also reject his other claims regarding the District Court's comment in front of the jury that Murillo had never asked for an interpreter, and the cross-examination of Murillo in that regard.

We reject Murillo's claim that during his cross-examination the prosecutor "testified" at trial by referring to his presence at a meeting with Murillo and an ICE agent. The prosecutor phrased his questions to Murillo impartially, simply making references to his presence, but neither introduced testimony by the ICE agent to counter Murillo's answers nor referred to them in his summation.

We also reject Murillo's contention that the prosecutor (with the government's witness) improperly read parts of the translated transcripts of the wiretap-recorded conversations to the jury. "[T]he[ ] reading of the transcripts did not constitute 'testimony' in the sense of 'evidence given by a competent witness, under oath or affirmation.'" United States v. Rengifo, 789 F.2d 975, 983 (1st Cir. 1986) (citation omitted).

determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). According to the Probation Office, the evidence at trial showed that the fraudulent document conspiracy created more than 100 documents, and it recommended that a nine-level increase to Murillo's base offense level was warranted because "the scope of the conspiracy was reasonably foreseeable" to Murillo. PSR ¶¶ 30, 32. The District Court adopted that recommendation.[2] We exercise plenary review over the District Court's interpretation of a particular Sentencing Guideline and review its factual findings for clear error. United States v. Zats, 298 F.3d 182, 185 (3d Cir. 2002).

The commentary to the relevant Sentencing Guideline, § 1B1.3(a)(1)(B), explains that "the scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy . . . ." U.S.S.G. § 1B1.3 cmt. n.2. Accordingly, to determine Murillo's accountability for his co-defendants' conduct, "the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." Id.; see also United States v. Collado, 975 F.2d 985, 991-

---

[2] Although it recognized the inconsistency between the enhancement and the Probation Office's recommendation that Murillo be afforded a two-level minor role downward adjustment pursuant to U.S.S.G. § 3B1.2(b), the Court nonetheless adopted that recommendation based on the fact that Murillo personally only requested three documents and did not himself create the fraudulent documents.

5

92 (3d Cir. 1992) (emphasizing that relevant conduct provision is concerned with scope of defendant's agreed-upon involvement in a conspiracy, not scope of conspiracy itself).

Murillo argues that the record only showed that he tried to procure three fraudulent documents for himself and his girlfriend, Ana Guevara, and that he should therefore not be held responsible for the 119 sets of names found on Martinez's typewriter ribbon. The District Court rejected Murillo's argument that he was just a purchaser, finding that the evidence at trial showed Murillo "knew what was going on," and knew before the evidence was seized from Martinez's apartment that his brother, Martinez, and Alan were in the business of creating fraudulent identification documents. Supp. App. at 715. We cannot agree with the District Court's conclusion that Murillo was more than a purchaser because there is no evidence that Murillo brought in other customers or acted as a broker for anyone other than himself and his girlfriend. The District Court improperly "focus[ed] on the scope of the conspiracy as a whole, rather than on the scope of [Murillo's] undertaking and involvement as required." United States v. Evans, 155 F.3d 245, 254 (3d Cir. 1998).

We agree with Murillo that the evidence shows only that he agreed to obtain three fraudulent documents for himself and his girlfriend. The fact that Murillo may have had knowledge of his co-defendants' criminal activity is not alone sufficient to establish the extent of the scope of criminal activity to which he agreed. See United States v. North, 900 F.2d 131, 133-34 (8th Cir. 1990), cited with approval in Collado, 975 F.2d at 994

6

(stating that "North was correctly decided because even though North was aware of Murphy's [drug] dealings with others, those dealings were outside the scope of the activity North agreed to undertake with Murphy"); see also United States v. Marquez, 48 F.3d 243, 246 (7th Cir. 1995) ("[R]easonable foreseeability means more than subjective awareness on the part of the individual defendants. . . . Instead, conduct of co-conspirators . . . can be considered reasonably foreseeable to a particular defendant if that defendant has demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct.") (citation and internal quotation marks omitted). Because the evidence demonstrates that Murillo's involvement in his co-defendants' fraudulent document business was limited to the three documents to be obtained for him personally, the District Court should not have considered the 119 sets of names found on Martinez's typewriter ribbon in the calculation of Murillo's sentence.

### III.

For the above-stated reasons, we will vacate the District Court's judgment of sentence and remand to the Court for resentencing on Murillo's term of supervised release consistent with this opinion.

7