NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 28, 2017
Decided October 16, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 16-4066, 16-4174

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>    *v.*<br><br>KAREN ZAIS and ANDREW NELSON,<br>    *Defendants-Appellants*. | Appeals from the United States District Court for the Western District of Wisconsin.<br><br>No. 16-CR-0028<br><br>James D. Peterson,<br>*Chief Judge*. |

**O R D E R**

Karen Zais and Andrew Nelson ("Defendants") pleaded guilty to a charge of conspiracy to distribute 500 grams or more of methamphetamine. At sentencing, the district court applied a two-level enhancement as a result of the Defendants' possession of three rifles. *See* U.S.S.G. § 2D1.1(b)(1). Because the district court did not commit clear error in finding that it was not clearly improbable that the rifles were connected with the drug conspiracy, we affirm.

I.

From January to June 2014, the Defendants were involved in a large-scale drug conspiracy. During that time, Jenna Zais (the daughter of defendant Karen Zais) introduced the Defendants to her boyfriend, Kyle Quintana, who began supplying the Defendants with methamphetamine. Quintana would arrange for various amounts of methamphetamine (eventually reaching a pound per week on average) to be delivered to the Defendants' residence, a 148-acre property in rural Wisconsin. Other dealers and users would then come to the Defendants' property to acquire the methamphetamine, and either Jenna or Quintana would arrive to pick up the money. Jenna received $20,000 from the Defendants on at least twenty occasions. Given concerns about contaminating the house with the drugs, the Defendants restricted their drug activity to a single "drug room" in the basement. The room contained video monitors connected to cameras showing the outside of the house in several directions.

On June 14, 2014, authorities conducted a search of the Defendants' home. In the search, law enforcement seized over 360 grams of methamphetamine, drug paraphernalia, a drug ledger, and other evidence of illicit activity. Officers also seized three firearms: a single-shot, bolt-action .22 caliber rifle; a semiautomatic .22 caliber rifle; and a .270 caliber rifle with a scope. Two of these rifles were leaning on the wall outside the drug room, and the other was in the door frame leading to the drug room. The rifles were unloaded, and officers found no ammunition in the house.

The Defendants pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine. At their separate sentencing hearings, both Defendants maintained that the rifles were not connected with their methamphetamine distribution, and therefore the two-level enhancement for possession of a firearm in connection with a drug offense should not apply. The district court considered their arguments and acknowledged that the connection between the rifles and the drug conspiracy was not "beyond a reasonable doubt." Nevertheless, given the location where the officers discovered the rifles, the surveillance equipment, and the large amounts of money and drugs involved in the conspiracy, the district court concluded that it was not "clearly improbable" that the rifles were connected to the conspiracy and applied the enhancement. The district court sentenced Zais to 72 months' imprisonment and five

years of supervised release. It sentenced Nelson to 54 months' imprisonment and five years of supervised release.[1]  The Defendants appeal.

II.

On appeal, the Defendants argue that the district court erred in finding that the rifles were connected with the offense and applying the two-level weapons enhancement. Sentencing Guideline § 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." Application Note 11(A) states that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n. 11(A); *see also United States v. Rogers*, 777 F.3d 934, 936 (7th Cir. 2015) ("In addition to the actual language of the Guidelines, we must also consider the Application Notes as they are considered part of the Guidelines and not mere commentary on them."). As an example, the Note describes that "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 cmt. n. 11(A).

Here, there is no dispute that the Defendants possessed the rifles, so the focus of our inquiry is whether it is "clearly improbable" that the rifles were connected with the drug conspiracy. *See United States v. Rollins*, 544 F.3d 820, 837 (7th Cir. 2008). The Defendants bear the burden of proof on that point. *Id.* While "[w]e review the district court's interpretation and application of the Sentencing Guidelines *de novo*," *United States v. Fife*, 471 F.3d 750, 752 (7th Cir. 2006), whether a weapon's connection with an offense is sufficiently probable is a question of fact, so we review the district court's finding for clear error, *United States v. Perez*, 581 F.3d 539, 546 (7th Cir. 2009). Applying that standard, our "task on appeal is not to see whether there is any view of the evidence that might undercut the district court's finding; it is to see whether there is any evidence in the record to support the finding." *United States v. Wade*, 114 F.3d 103, 105 (7th Cir. 1997).

---

[1]  Both sentences were below the Guidelines range, suggesting that the application of the enhancement was harmless. *See United States v. Hill*, 645 F.3d 900, 912 (7th Cir. 2011) ("When we are convinced that the sentence would have been the same absent the error, we deem the error harmless."). Nevertheless, the enhancement affects the Defendants by making them ineligible for a twelve-month sentence reduction upon completion of a drug-abuse-treatment program. *See* 28 C.F.R. § 550.55(b)(5)(ii) (excluding inmates from eligibility for early release if they are convicted of an offense involving the possession of a firearm). Consequently, we decline to engage in a harmless-error analysis.

The Defendants contend that the facts here fall within the scope of the example given in the Application Note. In making their argument, the Defendants rely heavily on a case from the Eighth Circuit, *United States v. North*, 900 F.2d 131 (8th Cir. 1990). In that case, the court concluded that it was clearly improbable that three guns (an antique pistol, an unloaded shotgun, and an inoperable rifle) seized from the defendant's house were connected with the defendant's drug activity. *Id.* at 134–35. The court based its decision in part on testimony from the defendant's son that the shotgun and the rifle, both of which were found in the son's bedroom, belonged to the son and were used for hunting. *Id.* at 135.

Despite the Defendants' contentions, this case is not the same as *North*, and the facts here show a much stronger connection between the firearms and the Defendants' conduct. The three rifles at issue here were not found in a bedroom upstairs, but in very close proximity to the one room in the house where the Defendants conducted their drug activities. This implies a strong connection between the rifles and those activities. *See United States v. Are*, 590 F.3d 499, 526 (7th Cir. 2009) (noting that there is a presumption of a connection "when a gun is found in 'close proximity' to illegal drugs"). And unlike *North*, there was no testimony from someone else saying the guns belonged to him. Additionally, the drug room was equipped with surveillance equipment, which indicates the Defendants were very interested in protecting the large amounts of money and drugs involved in their operation. Because drug traffickers often use firearms for protection, this likewise implies a connection between the rifles and the offense. *See United States v. Wetwattana*, 94 F.3d 280, 285 (7th Cir. 1996). If those video monitors pictured a stranger who might be a threat, the rifles were available to deter an unwanted visitor.

The Defendants also point to the lack of ammunition as evidence that the rifles were not connected with the drug conspiracy. However, the fact that the rifles were unloaded and no ammunition was found does not make it clearly improbable that the rifles were intended to protect the drug operation. An unloaded firearm may be used as a threat just as effectively as a loaded one because it is difficult, if not impossible, to tell whether a firearm is loaded when one is staring down its barrel. *See United States v. Paulk*, 917 F.2d 879, 882 (5th Cir. 1990) ("Flashing an unloaded gun often has the same effect as waving a loaded one.").

III.

Given these facts, we conclude that the district court did not clearly err in finding that it was not clearly improbable that the rifles were connected with the drug conspiracy. Accordingly, we also find no error in the district court's application of the two-level weapons enhancement. We AFFIRM.