**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Clifford WILLIAMS, Defendant–
Appellant.**

**No. 92–5151.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1992.

Decided Feb. 18, 1993.

Scott Alan Mager, Weinstein, Zimmerman & Nussbaum, P.A., Tarmac, FL, argued (E. Ross Zimmerman, on brief), for defendant-appellant.

Nicole Miller Healy, Sp. Asst. U.S. Atty., Office of U.S. Atty., Alexandria, VA, argued (Richard Cullen, U.S. Atty., on brief), for plaintiff-appellee.

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

## OPINION

LUTTIG, Circuit Judge:

Appellant Clifford Williams was convicted by a jury on two counts under a five-count superseding indictment charging him with various offenses stemming from his involvement in a drug distribution conspiracy operating in eastern Virginia. He challenges two of the district court's trial rulings and the computation of his sentence. We affirm.

### I.

Williams first argues that the district court erred in refusing to allow him to "backstrike" during the jury selection process. Williams, a Florida resident, was represented at trial by a member of the Florida bar, who had associated Virginia counsel as required by a published local rule of the Eastern District of Virginia. The Eastern District, by long-established, but unpublished, local custom employs the "jury box" system of jury selection. Under this system, after the *voir dire* of the entire panel of thirty to forty veniremen and any challenges for cause, the clerk selects by lot twelve members of the venire, who are seated in the jury box. Opposing counsel then may exercise their peremptory challenges against these prospective jurors. Those who are not struck at this time become members of the actual jury; those stricken are replaced by other veniremen, who are in turn subject to any remaining peremptory challenges. The process continues until the parties exhaust their challenges or a jury that is satisfactory to both sides is empaneled. *See* J.A. at 82.

After passing over a potential juror in the first round of the process, Williams sought to strike him in the second round. The district court refused this request to backstrike, ruling that under its local practice, the venireman in question had become

part of the permanent jury. *Id.* at 15–16. Williams now argues that, since no written local rule prohibited backstriking, and the court did not inform his out-of-district counsel of its policy prior to jury selection, his lead counsel was surprised and his right to make peremptory challenges was unduly infringed.[1]

Although not constitutionally protected,[2] the right to peremptorily challenge jurors is "one of the most important of the rights secured to the accused," *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894), and "a necessary part of trial by jury." *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). Williams' right to make such challenges, however, was not impaired through the process by which his jury was empaneled. As the district court noted in its opinion denying appellant's motion for new trial on this ground, "[Williams] had an opportunity to challenge, up to his allowable limit of ten, each juror selected." J.A. at 83. That Williams' Florida counsel may have been unfamiliar with the Eastern District of Virginia's jury selection system does not alter the fact that that system afforded him full latitude in exercising his right to make peremptory strikes.[3]

"[T]he method for exercising peremptory challenges remains largely a matter of local rule." *United States v. Anderson*, 562 F.2d 394, 397 (6th Cir.1977); *see also Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1227 n. 9 (1st Cir.1990) (trial judges have broad discretion in structuring the method of exercising peremptory challenges "so long as the litigants are on

actual *or constructive notice*" of the method to be used (emphasis added)). In a case in which the struck jury system of selection was at issue, this court suggested that

> absent a local rule of court *or established local practice* about how a jury will be selected and how peremptory strikes should be exercised ..., there is a duty on the part of the court to give clear, unambiguous instructions to counsel about the procedure to be followed....

*United States v. Ricks* (*Ricks II*), 802 F.2d 731, 733 (4th Cir.) (*en banc*) (emphasis added) (quoting *United States v. Ricks* (*Ricks I*), 776 F.2d 455, 461 n. 9 (4th Cir.1985)), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986). The district court in this case followed its established local practice in using the jury box system[4] and was under no obligation to inform Williams' counsel of the intricacies of that system before the jury was empaneled, particularly given that appellant's Florida counsel had associated local counsel, who presumably was familiar with the district's customs. *See Anderson*, 562 F.2d at 397 (defense counsel's ignorance of local rule requiring that jury box system be used provided no basis for allowing backstrikes, "particularly when he was assisted by local counsel who should have been aware of the rule").

## II.

■ Williams also contends that the district court erred in ruling that the prosecution, for purposes of impeachment, could inquire into his arrest on an unrelated

---

1. Appellant asserts that the Florida courts allow backstriking until the time the jury is sworn. Appellant's Br. at 12 n. 2.

2. Federal Rule of Criminal Procedure 24(b) provides for peremptory challenges and fixes the number available to each party in criminal trials.

3. Williams does not challenge the propriety or legitimacy of the jury box method itself, nor would he likely be successful in doing so. The Supreme Court upheld the use of a similar method of jury selection in *St. Clair v. United States*, 154 U.S. 134, 147–48, 14 S.Ct. 1002, 1007–1008, 38 L.Ed. 936 (1894).

4. Since the district court followed its long-standing practice, this case differs fundamentally from *United States v. Sams*, 470 F.2d 751 (5th Cir.1972), upon which Williams chiefly relies. The court in *Sams* reversed a conviction on the ground that the defendant's right to make peremptory challenges was unduly restricted. There, however, a visiting trial judge employed a jury selection method that varied from the local custom. Defense counsel was understandably surprised and prejudiced because the trial court "did not follow a standing rule of the district, by which all counsel practicing there were bound." *Id.* at 753.

charge. He asserts that as a result of this ruling, he was forced not to take the stand in his own behalf.

During trial, the government sought, for the purpose of impeachment, to introduce evidence that Williams had fraudulently obtained a fake driver's license and used it to cash stolen checks. The district court ruled that the government had proffered a good faith factual basis for asking about the possession and use of the false identification document, that the evidence concerned a bad act bearing on the truthfulness of the accused, and that the government could make inquiry into the fake identification and the check-cashing when cross-examining Williams, if he testified, or any witnesses that testified to his character for truthfulness. J.A. at 40–43, 83–84. Contrary to Williams' assertions on appeal, however, the court specifically held that the government could *not* introduce evidence of either Williams' arrest or the charges stemming from the check-cashing scheme, but rather that it could inquire only about the use of the fake driver's license and the cashing of the stolen checks. *Id.* at 41. The court also prohibited the government from impeaching any witnesses with extrinsic evidence, *e.g.*, the fake identification itself, because such impeachment is impermissible under Rule 608(b) of the Federal Rules of Evidence. *Id.* at 42, 84.

While Williams may have declined to take the stand because of the district court's ruling, the ruling was not in error. Had appellant testified, his credibility would have been drawn into question, as with any witness. It is a "well-settled rule that a defendant who voluntarily offers himself as a witness and testifies in his own behalf subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility." *United States v. Pennix*, 313 F.2d 524, 528 (4th Cir.1963); *see also United States v. Zandi*, 769 F.2d 229, 236 (4th Cir.1985). Such cross-examination may not include inquiry into whether the defendant-witness has merely been

arrested for another crime;[5] "[s]pecific instances of the conduct of a witness … may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness … concerning the witness' character for truthfulness or untruthfulness." Fed.R.Evid. 608(b). Williams' possession and use of false identification to cash stolen checks certainly are probative of his truthfulness and credibility as a witness, and the district court did not abuse its discretion by ruling that the government could question Williams about these matters if he chose to take the stand.

Similarly, any witness who would have testified to Williams' character for truthfulness could have been questioned regarding his knowledge of appellant's possession and use of the false driver's license. A defendant's character witness "is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions," so that the jury may evaluate "whether he is capable of giving any very reliable conclusions as to [the defendant's] reputation." *Michelson*, 335 U.S. at 479, 483, 69 S.Ct. at 220, 222. "[W]hile the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." *Id.* at 479, 69 S.Ct. at 220. Accordingly, the district court did not err in ruling that the government could use evidence of Williams' possession and use of the fake identification for impeachment purposes.

## III.

Finally, Williams claims that the district court calculated his sentence using an incorrect base offense level. Williams was convicted of one count of conspiracy to possess with intent to distribute 100 grams or more of heroin and 500 grams or more

**5.** *See Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948) ("Arrest without more does not, in law any more

than in reason, impeach the integrity or impair the credibility of a witness.").

of cocaine[6] and one count of attempted possession with intent to distribute 100 grams or more of heroin.[7] The district court found that the government had established by a preponderance of the evidence that between 1,400 and 1,500 grams of heroin were attributable to Williams, and sentenced him under a base offense level of thirty-two[8] to 121 months' imprisonment on each count, the terms to run concurrently. J.A. at 62–64. Williams now contends that the amount of heroin attributed to him wrongly included amounts distributed by the conspiracy before he joined it, and thus that a lower base level was warranted. He also argues that he deserved a further reduction in his base level because he was only a minor or minimal participant in the conspiracy.

■■■■ A defendant convicted of conspiracy should be sentenced not only on the basis of *his* conduct, but also on the basis of conduct of coconspirators in furtherance of the conspiracy that was known to the defendant or reasonably foreseeable to him. *See United States v. Vinson*, 886 F.2d 740, 742 (4th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). As Williams concedes, *see* Appellant's Br. at 20, "because the quantity of drugs goes to the question of the sentence rather than guilt, the government need only prove the quantity by a preponderance of evidence." *United States v. Engleman*, 916 F.2d 182, 184 (4th Cir.1990); *Vinson*, 886 F.2d at 741–42. Moreover, we review a district court's findings as to the quantity of drugs attributable to a particular defendant only for clear error. *United States v. Mark*, 943 F.2d 444, 450 (4th Cir.1991). The district court's sentencing of Williams based on an offense level of thirty-two was not clearly erroneous when judged against these standards.

■■■■ Williams was convicted largely on the basis of testimony from two coconspirators, Elizabeth Asante and Doris Dokwa,[9] and Special Agent Ronald Khan of the Drug Enforcement Administration. Special Agent Khan testified that Asante was responsible for getting the heroin into the United States and that Dokwa first acted as a courier herself and then recruited others on Asante's behalf. R. Vol. I at 261–62, Vol. II at 10. Asante and Dokwa testified that appellant was an active participant in the conspiracy for at least ten months from mid–1990 through mid–1991. Asante testified that Williams bought 100 grams of heroin and 500 grams of cocaine[10] for purposes of distribution from herself and Dokwa in Virginia on two separate occasions in mid–1990, and that Williams negotiated by telephone to buy 100 grams of heroin from Asante in July 1991. R. Vol. I at 20–21, 29–30, 36–38; J.A. at 69–70. Dokwa testified that she and Williams unsuccessfully attempted to retrieve another package of 500 grams of heroin from O'Hare Airport in Chicago in September 1990. *Id.* at 70. Dokwa also testified that courier Stella Smith smuggled another 600 grams of heroin from Ghana into the United States in mid–1990,[11]

---

6. Under the Drug Equivalency Tables of the United States Sentencing Guidelines, 500 grams of cocaine are equivalent to 100 grams of heroin.

7. The jury acquitted Williams of one count of possession of cocaine and was unable to reach a verdict on two counts of possession of heroin; these two counts were eventually dismissed on motion of the government. The counts on which Williams was convicted charged him with responsibility for the equivalent of 450 grams of heroin. J.A. at 4–8, 12–13, 60.

8. Under the Sentencing Guidelines, a base offense level of 32 is appropriate when at least one kilogram but less than three kilograms of heroin is attributed to a convicted offender. U.S.S.G. § 2D1.1(c)(6).

9. Asante and Dokwa previously had pled guilty to conspiracy to possess with intent to distribute one kilogram or more of heroin. J.A. at 68–69.

10. As observed *supra* note 6, this amount of cocaine is treated as equivalent to 100 grams of heroin for sentencing purposes.

11. Due to a typographical error in the presentence report, the district court mistakenly believed that the Smith shipment involved 650 rather than 600 grams. *See id.* at 62, 69 ¶ 15. The district court may have also double-counted a 100–gram transaction mentioned in the presentence report. These errors were *harmless*, however, since well over 1,000 grams of heroin were attributable to Williams even without any mistakenly-counted amount, and that quantity

and as part of the ongoing conspiracy, Dokwa gave 150 grams of this shipment to Williams to distribute. R. Vol. I at 117–18.[12] Under these circumstances, it was not clear error for the district court to attribute the other 450 grams to Williams for sentencing purposes as well, since the entire shipment was within the scope of the conspiracy and foreseeable to the coconspirators. *See Vinson,* 886 F.2d at 742; *see also United States v. Rowe,* 911 F.2d 50, 51 (8th Cir.1990) (amount of drugs sold by drug dealer's confederate was properly included in the quantity used to determine dealer's sentence).[13]

■ The district court refused to decrease Williams' base level on the ground that he was merely a minor or minimal participant. J.A. at 62. Williams may not have been as comprehensively involved in the conspiracy as its leaders, Asante and Dokwa, but he was an active conspirator for nearly a year who trafficked or sought to traffic large amounts of drugs on numerous occasions. The district court's decision not to reduce Williams' base level was not clearly erroneous. *See United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989).

### IV.

For the foregoing reasons, the appellant's convictions and sentence are affirmed.

*AFFIRMED.*

---

is the relevant lower amount of the range for base offense level 32. *See supra* note 8.

**12.** Contrary to Williams' contentions on appeal, this testimony confirms that his sentence was not based upon transactions that occurred prior to the time he joined the Asante–Dokwa drug conspiracy.

**13.** Because the amounts of heroin attributed to Williams were either known to him or reasonably foreseeable by him and within the scope of his agreement in the conspiracy, cases cited by appellant wherein amounts that were not reasonably foreseeable to the defendant were attributed to him are inapposite. *See, e.g., United States v. Rivera,* 898 F.2d 442 (5th Cir.1990); *United States v. Carmody,* 753 F.Supp. 917 (M.D.Ala.1990), *aff'd,* 940 F.2d 673 (11th Cir. 1991).