21 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michelle Lynn HARSHEFI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adoram HARSHEFI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hillary Lavaughn KELLIBREW, Defendant-Appellant.
 Nos. 92-5525, 92-5568, 92-5612.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 1, 1993.
Decided April 14, 1994.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (Cr-92-27-JFM)
 Donald Henry Feige, Baltimore, MD, for appellant Michelle Harshefi; Alan Royce Lee Bussard, Towson, Maryland, for appellant Adoram Harshefi; Warren Anthony Brown, Rosenberg & Brown, Baltimore, MD, for appellant Kellibrew.
 Andrea L. Smith, Asst. U.S. Atty., Office of the United States Attorney, Baltimore, MD, for appellee.
 Richard D. Bennett, U.S. Atty., Thomas M. DiBiagio, Asst. U.S. States Attorney, Office of the United States Attorney, Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Adoram Harshefi, Michelle Harshefi, and Hillary Kellibrew were each convicted in the United States District Court for the District of Maryland of distribution and possession with intent to distribute heroin, and conspiracy to distribute and possess with intent to distribute heroin. Adoram and Michelle Harshefi, husband and wife, argue that there was no probable cause for their arrest and that certain evidence obtained after a search of their hotel room should not have been admitted at trial. Mr. Harshefi also argues that the district court erred in sentencing him when it failed to decrease his offense level by two points for acceptance of responsibility under U.S.S.G. Sec. 3E1.1. Kellibrew argues that there was insufficient evidence to convict him on the two charges and that the district court erred in sentencing him when it attributed all of the more than 100 grams of heroin found in the hotel room to him. Because we find no error in Mrs. Harshefi's convictions, Mr. Harshefi's convictions and sentence, and Kellibrew's convictions and sentence, we affirm the district court.
 
 
 2
 * During the course of an investigation in November 1991, Special Agents Kula and Bass of the Drug Enforcement Agency intercepted telephone conversations regarding the possession and distribution of narcotics. Participating in these conversations, among others, were the Harshefis. Agent Kula then made inquiries about the Harshefis and learned that Mr. Harshefi had been arrested on charges of possession of heroin in Baltimore in October 1991, and he was scheduled to appear for trial in Baltimore City District Court on January 13, 1992.
 
 
 3
 Agent Kula and other agents conducted surveillance at the Baltimore City District Court on January 13, 1992. The Harshefis appeared for Mr. Harshefi's trial. The charges were stetted pursuant to state law, and the Harshefis left the courthouse. The agents then followed the Harshefis to the Best Western Inn where they registered and were assigned room 201.
 
 
 4
 After the Harshefis checked in, the agents familiarized themselves with the layout of the rooms in the hotel, and while looking at a room on the Harshefis' floor, they were observed by Mr. Harshefi, who looked directly at Agent Kula three times. Throughout the course of the evening, agents continued to conduct surveillance at the hotel. They observed Mr. Harshefi make several telephone calls from a public telephone in the lobby, despite the fact that the telephone in his room was in working order. Around 9:00 p.m., the agents observed a man arrive at the hotel whose car description and license tag matched a car that had earlier been connected to Mr. Harshefi. The man entered the hotel bar, met a second man who had a paper bag, and followed him to the Harshefis' room. The first man then left the Harshefis' room after about fifteen minutes, returned to his car, and drove off in the direction of Washington, D.C.
 
 
 5
 Mr. Harshefi was later seen using the public telephones in the lobby, once at 10:00 p.m. and again at 10:45. Then, at around 11:00 p.m., Mr. Harshefi left his hotel room wearing an unzipped jacket, got into his car, and drove approximately two and one-half miles to an Exxon station, where he used yet another public telephone. Another car arrived at the Exxon station at approximately 11:20 p.m., and stopped next to Mr. Harshefi's car. Harshefi got into it. That car drove off and the agents who were conducting surveillance followed the car, which was driven in a manner consistent with an attempt to determine if any counter-surveillance was being conducted. The car finally returned to the Exxon station, and Mr. Harshefi got out. Harshefi's coat was closed at that point.
 
 
 6
 Mr. Harshefi drove his car back to his hotel at a high rate of speed. When he got out of his car, he looked around nervously and walked as if he were holding something inside of his zipped-up coat. He returned to his room, but was seen approximately ten minutes later using the public telephones in the lobby once again.
 
 
 7
 At 10:20 or 10:25 a.m. the next day, the agents observed Mr. Harshefi leave the hotel, get into his car, and drive directly to the same Exxon station he had visited the previous night. He again made a call from the public telephone, and then he drove to a McDonald's parking lot on the other side of the shopping mall in which the Exxon station also was located. Mr. Harshefi got out of his car and looked around as if he were trying to find something, but then he returned to his car, drove back to the Exxon station, and once again used the public telephone.
 
 
 8
 At approximately 10:50 a.m., Kellibrew drove up and parked his car behind Harshefi's. Kellibrew got out and approached Harshefi, who was standing near the public telephone. Harshefi yelled at Kellibrew, and Kellibrew then walked to the trunk of his car and retrieved a paper grocery bag from it. Kellibrew gave the bag to Harshefi, who put it in the trunk of his car. Both men acted as if they were nervous during the exchange of the paper bag. Harshefi and Kellibrew next drove their cars to the hotel. When they arrived at the hotel, Harshefi retrieved the paper bag from his trunk and went over to Kellibrew's car to speak to him. Harshefi then entered the hotel, while Kellibrew walked around the hotel parking lot and a nearby embankment for approximately five minutes. During this time, Kellibrew made eye contact with two surveillance agents. After walking around, Kellibrew entered the hotel.
 
 
 9
 Approximately two minutes later, Mr. Harshefi and Kellibrew left the hotel, got into their respective cars, and drove out onto the main road. Five cars, each containing one surveillance agent, followed them. The parade of seven cars travelled an erratic route, which included a sudden crossing of traffic lanes and an abrupt U-turn. After making the U-turn, Harshefi and Kellibrew looked at the surveillance agents in each of the five cars, and drove back to the hotel, driving very fast. During the drive, both Harshefi and Kellibrew were looking over their shoulders and in their mirrors.
 
 
 10
 The agents met in an Exxon station parking lot[1] that overlooked the hotel parking lot and decided to enter the Harshefi's hotel room because they feared that evidence stored there might be subject to tampering. The agents put on their raid jackets, ran to the hotel, got a key to room 201 from the hotel manager, and approached the Harshefis' room. The agents heard loud talking and repeated flushing of a toilet. The agents first tried to gain access to the hotel room by pretending to be room service, but Mrs. Harshefi told the agents that they had already eaten. The agents next said they were hotel management, and Mrs. Harshefi said that she had to get dressed. During this time, the commotion in the room and the repeated flushing of the toilet continued. The agents then twice identified themselves as police officers and demanded that the door be opened. After the second demand, Mrs. Harshefi opened the door approximately six inches and stood in the gap. The agents pushed past her into the room, and some of the agents entered the bathroom, where they discovered Mr. Harshefi attempting to flush something down the toilet. The agents also observed a stack of money on the edge of the bathtub, a paper bag full of money, and a substance later identified as heroin and morphine both floating in the toilet bowl and jammed in the toilet pipe. The agents arrested the Harshefis. Kellibrew was arrested by other agents in another part of the hotel.
 
 II
 
 11
 We first turn to the Harshefis' claim that there was no probable cause for their arrest. In view of the facts and circumstances known to the agents prior to the Harshefis' arrest, we affirm the district court's ruling that probable cause existed for the Harshefis' arrest. See Beck v. Ohio, 379 U.S. 89 (1964).
 
 
 12
 We next turn to the Harshefis' claim that the evidence obtained after the search of their hotel room should not have been admitted against them at trial.[2] Indeed, this is the issue upon which these convictions must stand or fail. At the outset, we note that the only pieces of evidence subject to the Harshefis' contention are the drugs removed from the toilet bowl and the money found in the bathroom. The agents seized this evidence, conducted a search for weapons, and secured the Harshefis, but waited until they had obtained a search warrant to conduct a search of the room.
 
 
 13
 The district court heard testimony during the suppression hearing and determined that the government had established the existence of exigent circumstances which justified a warrantless search. See United States v. Turner, 650 F.2d 526, 528 (4th Cir.1981). We sustain a district court's finding on exigent circumstances unless it is clearly erroneous. Turner, 650 F.2d at 628. We think the record is clear that exigent circumstances existed in this case. Although not the sole reason for the existence of the doctrine, we have noted that when police believe contraband is present and may be destroyed before a search warrant can be obtained, a warrantless search is justified. Id. Here, the agents had reason to believe that drugs were in the room and that Mr. Harshefi knew that he was under surveillance by a large number of police and agents. Both Mr. Harshefi and Kellibrew had seen the agents at different times before getting into their cars, and the incidents concerning the seven-car parade indicate that they both suspected and then confirmed that they were under surveillance. Their hasty return to the hotel could have been only to destroy evidence before their inevitable encounter with the agents. In addition, if the agents had any doubts before arriving outside the room, the repeated flushing of the toilet led them to believe that contraband was being destroyed. This was, incidentally, true because Mr. Harshefi was flushing the heroin. We affirm the district court's finding of exigent circumstances.[3]
 
 III
 
 14
 Mr. Harshefi also argues that the district court erred when it did not decrease his offense level by two points based on his acceptance of responsibility. The Sentencing Guidelines provide:"If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G.Sec. 3E1.1(a) (1991). The determination of whether to apply the reduction of Guideline Sec. 3E1.1 is a factual issue that is subject to the clearly erroneous standard of review. United States v. White, 875 F.2d 427, 431 (4th Cir.1989). The district court adopted the presentence report's findings that Harshefi was not entitled to the reduction because he "declined to give any statement relative to his convictions because of his pending hearing in July vis a vis the wire tap evidence," and because, although he eventually began to take some responsibility for his actions in letters he submitted to the probation officer, his convictions were not merely a result of being trapped in drug addiction, as Harshefi had apparently claimed. The probation officer therefore determined, and the district court agreed, that Harshefi's expressions of acceptance of responsibility fell "far short of what the Guidelines require," and he therefore was not entitled to the two-level reduction.
 
 
 15
 After reviewing the record, we are of opinion that the district court's factual finding supporting its conclusion that Harshefi was not entitled to the two-level reduction of GuidelineSec. 3E1.1 was not clearly erroneous.
 
 IV
 
 16
 Kellibrew raises a challenge to the sufficiency of the evidence against him on the two charges and to his sentence based on the amount of drugs the district court attributed to him. We review challenges to the sufficiency of the evidence to sustain a conviction under the familiar standard of Glasser v. United States, 315 U.S. 60 (1942). We must sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." 315 U.S. at 80. At trial, Agent Kula testified that on January 14 he observed the meeting at the Exxon station between Kellibrew and Harshefi, Kellibrew's delivery of the brown paper bag to Harshefi, their subsequent return to the hotel, Kellibrew's walk around in the hotel parking lot, his departure with Harshefi from the hotel, their subsequent driving behavior, and hasty return to the hotel. Agent Kula also testified that both cars had been returned to the hotel parking lot during the time the agents were preparing to go to the Harshefis' room. Agent Kula further testified that a brown paper bag was found in the Harshefis' bathroom which contained approximately $15,500. On cross-examination, Agent Kula testified that in his opinion the bag found in the Harshefis' room was the same one Kellibrew had handed Harshefi. Detective Coburn of the Baltimore County Police Department testified that when he arrested Kellibrew at the hotel, he recovered $500 in cash and a pager, and when he searched Kellibrew's car, he recovered a bag full of plastic bags used to distribute individual doses of drugs. This is only part of the evidence the government presented against Kellibrew at trial. After a review of the record, we are of opinion that the jury's verdict is supported by substantial evidence, and we affirm it.
 
 
 17
 Kellibrew's second contention about the amount of drugs attributable to him at sentencing is equally without merit. The district court in this case attributed the amount of heroin foreseeable to Kellibrew and found that it was all of the heroin involved. The district court adopted all of the presentence report's findings, including the finding that the amount of heroin involved in the conspiracy was 108 grams. We find that the district court's determination of the amount of drugs attributable to Kellibrew was not clearly erroneous, and we therefore affirm his sentence. 18 U.S.C. Sec. 3742(e); United States v. Williams, 986 F.2d 86, 90 (4th Cir.), cert. denied, 61 U.S.L.W. 3852 (U.S.1993).
 
 
 18
 We find no merit in any of the points raised on appeal. We accordingly affirm the appellants' convictions and sentences.
 
 AFFIRMED
 
 
 [1]
 This was not the same Exxon station at which Harshefi had used the public telephone and met Kellibrew
 
 
 [2]
 The Harshefis also claim that the agents had sufficient time to obtain a telephone warrant pursuant to Fed.R.Crim.P. 41(c)(2) and should have done so. The district court considered the issue and determined that there was not sufficient time to obtain a warrant, and further, there was no need to do so in light of the circumstances. We are of opinion that the district court's findings are not erroneous
 
 
 [3]
 The Harshefis argue that the agents created the exigent circumstances in this case by blundering in their surveillance, and the government therefore cannot rely on the exigent circumstances exception to justify the warrantless search. We reject that contention. After the parade, a great many people are bound to have known a drug operation was being attempted by the defendants. It was not the agents' fault that the defendants chose to handle their drugs in a manner to invite attention and observation