46 F.3d 1127
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lonnie CHANEY, Defendant-Appellant.
 No. 94-5467.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 9, 1994.
Decided Jan. 18, 1995.
 
 ARGUED: George A. Mills, III, Huntington, WV, for Appellant. Paul Thomas Farrell, Assistant United States Attorney, Huntington, WV, for Appellee. ON BRIEF: Rebecca A. Betts, United States Attorney, Huntington, WV, for Appellee.
 Before LUTTIG, Circuit Judge, MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation, and CURRIE, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Lonnie Chaney journeyed with several associates by bus from Detroit, Michigan to Huntington, West Virginia, where the group began distributing crack cocaine. Chaney was arrested in Huntington by members of a federal drug task force and charged with conspiracy to distribute and to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. Sec. 846, and with carrying and[1] using a firearm during and in relation to the commission of drug trafficking crimes, in violation of 18 U.S.C. Sec. 924(c)(1). A jury found him guilty on both counts, and the court sentenced him to 152 months in prison. Chaney appeals, alleging that the jury's verdicts were not supported by sufficient evidence, and challenging three rulings rendered by the district court. We affirm.
 
 I.
 
 2
 It is beyond question that the evidence presented at Chaney's trial, viewed in the light most favorable to the government, was sufficient that a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).
 
 
 3
 To establish Chaney's guilt on the conspiracy charge, the United States needed to prove that an agreement existed to undertake conduct in violation of the federal controlled substances laws, and that Chaney willfully joined in that agreement. United States v. Clark, 928 F.2d 639, 641-42 (4th Cir.1991); see also United States v. Shabani, 115 S.Ct. 382 (1994) (rejecting requirement of overt act in furtherance of the conspiracy for 21 U.S.C. Sec. 846 conviction). To prove a violation of 18 U.S.C. Sec. 924(c)(1), as was charged in count two of Chaney's indictment, the government had to establish only that a firearm was present for protection and to increase the likelihood of the conspiracy's success. United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991).
 
 
 4
 The United States presented considerable evidence in support of both charges. The strongest evidence was the testimony of Drug Task Force Agent Gary Akers, who interviewed Chaney following his arrest. Akers testified that Chaney admitted that he came to Huntington from Detroit with a group to sell crack, and that he was part of a "show of force" designed to deter attacks on the Detroit group by Huntington locals. Chaney reportedly also explained that he directed customers into the crack house from which he and his co-conspirators operated, and that he handled weapons while in Huntington. J.A. at 91-95. Chaney claimed at trial that he had made no such admissions to Akers, but the jury apparently found Akers' testimony credible.
 
 
 5
 Even without Akers' testimony, the evidence adequately supported the guilty verdicts. Four of Chaney's co-conspirators testified that he was one of a group that traveled by bus from Detroit to Huntington, and that the purpose of the group's voyage was to sell drugs in Huntington. J.A. at 105 (testimony of Michael Phillips), 167-70 (testimony of Norman Gordon), 205-06 (testimony of Terrell Johnson), 360-61 (testimony of Kenneth Sanders). Co-conspirator Michael Phillips testified that he witnessed Chaney sell drugs, possess a 9-millimeter handgun, and "hit [a female customer] in the head with the gun a couple of times" in a dispute arising out of a drug sale. J.A. at 114-20. Co-conspirator Norman Gordon stated that everyone who came from Detroit had a weapon in his possession at one time or another while in Huntington.[2] J.A. at 196. Co-conspirator Kenneth Sanders testified that Chaney acted as one of the group's bodyguards and handled weapons in the crack house. J.A. at 365-67. Linda Garrett, finally, testified that she was the woman who was struck in the head with a gun, and positively identified Chaney as her assailant. J.A. at 279-81.
 
 
 6
 The evidence was more than sufficient to show that Chaney knowingly and willingly participated, as a bodyguard if not also as a salesman, in a conspiracy to sell crack cocaine in Huntington. It was likewise sufficient to show that Chaney not only carried a firearm to intimidate local competitors, but also used a firearm to pistol-whip a delinquent customer.
 
 II.
 
 7
 Chaney next argues that the district court abused its discretion by denying his motion to sever his trial from that of his co-defendant Rodney Scott. Chaney claims that he was prejudiced by the ruling because Scott's defense--that he was a customer, rather than a colleague, of the alleged drug conspirators--undermined Chaney's defense that no drug conspiracy existed. Some degree of conflict between the defenses of co-conspirators is inevitable; nonetheless, joinder of defendants remains "highly favored in conspiracy cases," and severance is a matter "committed to the sound discretion of the district court." United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir.1986). In this case, the conflict between Scott's and Chaney's defenses was hardly irreconcilable--the jury could have found, for example, that Scott was a customer of various drug dealers, but that the government had not proven beyond a reasonable doubt that the drug dealers were linked as participants in a conspiracy. We therefore conclude that the district court did not abuse its discretion in denying Chaney's motion to sever.
 
 III.
 
 8
 Chaney also challenges the district court's denial of his motion to suppress the testimony of Drug Task Force Agent Akers concerning his post-arrest interview of Chaney. After conducting a pretrial hearing, the district court ruled that Chaney's statement--if there was one, which he left for the jury to determine--was voluntarily given and therefore admissible. J.A. at 54.
 
 
 9
 This ruling was not clearly erroneous. The court essentially was faced with a credibility question. Drug Task Force Agent Kenneth Burner, who arrested Chaney, testified that he had read Chaney the Miranda warnings, and that Chaney had indicated that he understood his rights, J.A. at 27-29; Agent Akers claimed that Chaney had indicated that he had received and understood the Miranda warnings, and that during the interview Chaney had never expressed a desire to stop answering questions, or to have an attorney present, J.A. at 35. Chaney, by contrast, testified that he did not recall whether Burner read him his Miranda rights, J.A. at 43, and that he had asked for a lawyer when Akers began to question him, J.A. at 44. Noting that Chaney stated only that he did not recall--and did not deny--having been read his Miranda rights, the district court found that "Sergeant Burner did read him his Miranda rights." J.A. at 53. The court did not explicitly address Chaney's claim that he had requested an attorney when he was interviewed by Akers, but it implicitly rejected Chaney's version of the events. The district court is more competent than are we to evaluate the reliability of witnesses, and we will not second-guess the credibility determination in this case without strong evidence tending to undermine Burner's or Akers' version of events. Because Chaney has failed to produce any such evidence, we find that the district court did not clearly err in denying Chaney's motion to suppress.
 
 IV.
 
 10
 Although the probation officer estimated that 49 grams of crack were distributed by the members of the drug conspiracy, J.A. at 646, the district court attributed only 17.9 grams of crack--the amount found on the premises of the crack house--to Chaney in determining his offense level. Chaney contends that the court clearly erred in attributing even this smaller amount to him, because the evidence showed that he personally distributed less than 17.9 grams. As a participant in the conspiracy, Chaney can be held criminally liable for the acts of his co-conspirators if those acts were done in furtherance of the conspiracy and were reasonably foreseeable. United States v. Williams, 986 F.2d 86, 90 (4th Cir.1993). The district court found that Chaney was involved in the conspiracy to such a degree that the drugs possessed by his co-conspirators could be attributed to him:
 
 
 11
 He was there at the premises almost constantly. He observed the sale of cocaine base. He handled the gun.... So he was active in the trafficking of cocaine base and he had to have known that a considerable amount of cocaine base was involved. I will attribute to him the 17.9 grams, 17.9 grams of cocaine base that was recovered from the outbuilding.
 
 
 12
 J.A. at 623-24. For the reasons described in Section I of this opinion, this ruling is not clearly erroneous.
 
 CONCLUSION
 
 13
 Finding no merit to any of Chaney's assignments of error, we affirm the judgment of the district court.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Although the statute requires only that the defendant carry or use a firearm, see 18 U.S.C. Sec. 924(c)(1), the indictment charged Chaney with both carrying and using, J.A. at 7
 
 
 [2]
 Chaney's co-defendant Rodney Scott testified that "[a]nybody that come [to the crack house] and sell drugs there brought guns, you know. And anytime you see drugs, you see guns. It's never just drugs or never just guns. It's drugs and guns. They go together like a hot dog and mustard." J.A. at 332