**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

RONALD EUSTACH, a/k/a Tony
Stracan,
            *Defendant-Appellant.*

No. 01-4067

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JOHNNY JOSEPH, a/k/a Joe Sanders,
            *Defendant-Appellant.*

No. 01-4068

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

DION JAMES, a/k/a Delvin Percy
James,
            *Defendant-Appellant.*

No. 01-4069

Appeals from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CR-00-67)

Submitted: October 10, 2001

Decided: October 24, 2001

Before MICHAEL, MOTZ, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

William F. Nettles, IV, Assistant Federal Public Defender, Florence, South Carolina; William James Hoffmeyer, NETTLES, MCBRIDE & HOFFMEYER, P.A., Florence, South Carolina; James T. McBratney, MCBRATNEY LAW FIRM, Florence, South Carolina, for Appellants. Alfred William Walker Bethea, Assistant United States Attorney, Florence, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

### OPINION

PER CURIAM:

Roland Eustache, Johnny Joseph, and Dion James appeal their convictions for possession with intent to distribute less than 500 grams of cocaine and less than five grams of cocaine base and conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and in excess of 50 grams of crack cocaine, under 21 U.S.C.A. §§ 841, 846 (West 1999 & Supp. 2001). Appellants were each sentenced to 360 months in prison. On appeal, Appellants' lawyers have filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), raising several issues but finding them to be without merit. James has filed a pro se supplemental brief, which appears to raise arguments on behalf of all three Appellants. Both counseled and pro se issues will be examined in turn.

## I.

Appellants first argue that §§ 841, 846 are unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We reject this argument on the reasoning of the Tenth Circuit in *United States v. Cernobyl*, 255 F.3d 1215 (10th Cir. 2001) (citing cases from the Fifth, Seventh, and Eleventh Circuits).

## II.

All three Appellants challenge the sufficiency of the evidence supporting each of their convictions. A jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942). In determining whether the evidence in the record is substantial, we view the evidence in the light most favorable to the Government and inquire whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). In evaluating the sufficiency of the evidence, we do not review the credibility of witnesses, and we assume that the jury resolved all contradictions in the testimony in favor of the Government. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998).

The essential elements of possession with intent to distribute are (1) knowing and intentional possession of a controlled substance, either actual or constructive, and (2) the intent to distribute. *United States v. Nelson*, 6 F.3d 1049, 1053 (4th Cir. 1993), *overruled on other grounds*, *Bailey v. United States*, 516 U.S. 137 (1995). To prove a conspiracy to possess crack cocaine with an intent to distribute it, the Government had to prove (1) the existence of an agreement between two or more persons to possess crack with intent to distribute, (2) that the defendant knew of the conspiracy, and (3) that the defendant knowingly and voluntarily became part of the conspiracy. *Burgos*, 94 F.3d at 857. Once the existence of a conspiracy is proven, the Government need only show a slight connection between the defendant and the conspiracy. *Id.* at 861. The testimony of accomplices may, by itself, provide an adequate basis for conviction. *United States v. Burns*, 990 F.2d 1426, 1439 (4th Cir. 1993).

At trial, Gerald Francois, an FBI informant, testified that he drove from Miami, Florida to South Carolina with Joseph. After arriving in Florence, South Carolina, two kilograms of cocaine were removed from under the hood of the car. Joseph and Francois then went to a residence and met Eustache. During the next seven days, Eustache and Joseph cooked some of the cocaine into crack. Then, Eustache, Joseph, and Francois took the crack to Mullins, South Carolina on two different occasions and sold it to a female named "Weezy." On one of these occasions, James was at Weezy's house, and he returned with the other three men to Florence.

Francois and James separately returned to Florida, where they bought "cut" at Joseph's instructions and had it delivered to Florence by Jean Jasmine and another man. Francois, Jasmine, Joseph, Eustache, and James met back in Florence, where Joseph wrapped cash in plastic and gave Jasmine $29,000.

On Francois' information, the police obtained a search warrant for the Florence house, where they arrested all three Appellants. Appellants provided false names at arrest and attempted to flee. The police recovered a cellular phone, pagers, a mashed potato box containing cocaine, sandwich bags, and a handgun. The police also found documentation of drug sales and kitchen utensils that appeared to have been used in the manufacture of crack cocaine. The actual drugs seized from the raid amounted to over 240 grams of cocaine and 11.4 grams of marijuana.

Travis McCants, an admitted drug dealer, testified about crack cocaine transactions with Shervin Pierre, who was part of the "Florida boys," along with Appellants. Although McCants bought from Pierre, all three Appellants were usually present. Rodney Ward, another drug dealer, testified that he bought drugs from Joseph. On one occasion, James was present when Ward purchased 4 ounces (over 112 grams) of crack cocaine prior to the activities described by Francois.

Christy Gerald testified that when the defendants were arrested, James said that all the drugs were his. Agent Wilkes testified that James made this statement to him, also, but then tried to take it back when Wilkes informed James that he would be prosecuted in federal court.

Thus, the evidence showed that all three Appellants were part of a larger conspiracy that sold crack cocaine to other dealers. They were arrested in possession of a large amount of cocaine as well as drug paraphernalia and other indications of drug dealing. While Appellants argued that the Government's witnesses were not credible, the jury clearly believed their testimony. We find that the evidence was sufficient to show both a drug conspiracy involving over 50 grams of crack cocaine and possession of cocaine with intent to distribute.

## III.

The jury found Eustache guilty of a conspiracy involving over 50 grams of crack cocaine beyond a reasonable doubt. Eustache argues that the district court erred in finding him responsible for any greater amount. The district court found, by a preponderance of the evidence, that Eustache was responsible for at least 1.5 kilograms of crack cocaine.

We review a district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error. *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). A conspiracy sentence under the guidelines must be calculated on the basis of all criminal activity undertaken in concert with others, including conduct of others in furtherance of the conspiracy that was known to Eustache or reasonably foreseeable to him. *See United States v. Williams*, 986 F.2d 86, 90 (4th Cir. 1993).

Here, the evidence showed that Eustache was involved in a conspiracy that transported two kilograms of powder cocaine to South Carolina and cooked a portion of it into crack. In addition, all the evidence at trial of drug sales by the conspiracy involved crack cocaine. Thus, it could be inferred from the evidence that the conspiracy intended to convert all two kilograms of cocaine into crack. Accordingly, the district court did not err in attributing 1.5 kilograms of crack cocaine to Eustache.

## IV.

Following *Miranda** warnings and his arrest, James stated, in the

---

*Miranda v. Arizona*, 384 U.S. 436 (1966).

presence of Gerald and Wilkes, that he was responsible for all the drugs found in the house pursuant to the search warrant. He now asserts that the district court erred in admitting this statement. There is no evidence of coercive Government conduct, and a review of the record shows that James' statements were completely voluntary. *See United States v. Braxton*, 112 F.3d 777, 780-81 (4th Cir. 1997). Thus, the district court did not err in denying James' motion to suppress.

V.

Following their convictions, but before sentencing, all three Appellants joined in a motion for a new trial based on newly discovered evidence. The new evidence was a letter allegedly sent by McCants to Ward offering to lie on Ward's behalf in a state court murder trial. Appellants alleged that the Government was aware of this letter and failed to disclose it, even though it "greatly affected" McCants' credibility. In their pro se brief, Appellants challenge the denial of the motion. In addition, they allege a conspiracy between McCants and Ward to lie at Appellants' trial.

The district court's decision to deny Appellants' motion for a new trial is reviewed for a clear abuse of discretion. *United States v. Dorsey*, 45 F.3d 809, 817 (4th Cir. 1995). The circuit utilizes a five-part test to determine whether a motion based on newly discovered evidence should be granted: (i) is the evidence, in fact, newly discovered; (ii) are the facts alleged from which the court may infer due diligence on the part of the movant; (iii) is the evidence relied upon not merely cumulative or impeaching; (iv) is the evidence material to the issues involved; and (v) would the evidence probably result in acquittal at a new trial? *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989). In addition, viewing the motion as raising prosecutorial misconduct for failure to disclose the letter, Appellants must show that they suffered prejudice from the suppression of the evidence. *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 559 (4th Cir. 1999).

At best, evidence of the letter would be admissible to impeach McCants. However, McCants was already impeached by his prior convictions, the favorable terms of his plea agreement, and his prior inconsistent statements. Thus, any additional impeachment would

have been merely cumulative. Furthermore, McCants' testimony, while providing a bit of background to the conspiracy, did not directly involve Appellants. Thus, even if this new evidence had been admitted at trial, the result would have been the same. Therefore, the district court did not abuse its discretion in denying the motion for a new trial.

Appellants' argument that McCants and Ward participated in a scheme to fabricate evidence at Appellants' trial was not presented to the district court. In addition, the only evidence Appellants provide is inconsistent statements of McCants and Ward regarding dates and amounts of drug sales. Even assuming that this argument has not been waived by its failure to raise it below, we find that these allegations would not have changed the district court's decision to deny the motion for a new trial. Thus, we reject this claim.

## VI.

Appellants next contend that the prosecutor's opening and closing arguments contained improper vouching and bolstering of witnesses and referred to evidence never proved at trial. Appellants did not object at trial, and thus, our review is for plain error.

Our close review of the prosecutor's arguments show that most of the objected-to statements were proper comment on the evidence. To the extent any of the prosecutor's statements were improper, we find that these isolated statements did not prejudice Appellants in light of the overwhelming evidence that they were dealing in crack cocaine.

## VII.

Appellants challenge the search warrant on two grounds. First, they argue that, because the docket sheet shows the filing of an application for a search warrant and the return of that warrant on May 16, 2000, the May 10 search was improperly done without a search warrant. Next, they contend that the affidavit did not provide probable cause, because Francois' allegations were uncorroborated.

Addressing the first issue, the search warrant for the Florence house and supporting affidavit are dated May 10 and refer to the

house itself. The May 16 docket sheet entries appear to refer to a second search warrant for any "vehicles within the curtilage and registered to defendants and outbuildings." In addition, even if there was only one warrant, it is possible that the docket entries were made after the search warrant was executed. Because the docket sheet is the only evidence presented by Appellants and it is inconclusive at best, this issue is meritless.

Regarding the second issue, a district court's determination of probable cause under the Fourth Amendment is an issue of law that we review de novo. *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996). Great deference is to be given a magistrate judge's assessment of the facts when making a determination of probable cause. *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992). The magistrate judge need only make a common sense determination of whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* The facts presented to the magistrate judge need only warrant a man of reasonable caution to believe that evidence of a crime will be found. The probable cause standard does not demand a showing that such a belief be correct or more likely true than false. *Id.* When an informant has proven to be reliable in the past and has firsthand knowledge of the criminal activity in question, probable cause exists for issuing a search warrant. *See United States v. Chavez*, 902 F.2d 259, 264 (4th Cir. 1990) (finding that an informant's reliability may be established by showing that the informant previously gave tips which have proved to be correct or that the information given has been corroborated).

Here, DEA Agent Joseph M. Koenig filed an affidavit, stating that a "confidential and reliable source" had stated that approximately 1.5 kilograms of crack cocaine had been taken from Florida to the subject house and cooked into crack in his presence. Another DEA agent located the house, which was as the source described, and noticed a car with Florida tags outside. Koenig also stated that the source had given reliable information in the past leading to arrests and controlled purchases. Considering all of the circumstances enumerated in the affidavit and the great deference accorded the magistrate judge's assessment of probable cause, we find that there was a fair probability that the house contained contraband. Koenig corroborated part of what the source stated and also averred that the source was known to

the DEA as a reliable informant. Thus, admission of evidence found during the search was proper.

## VIII.

In his pro se brief, Joseph challenges the calculation of the drug quantity attributable to him. This argument fails for the reasons stated in section III above. Joseph also attempts to challenge the drug quantity under *Apprendi* and its progeny. However, the jury found Joseph guilty of a conspiracy involving 50 grams or more of cocaine base, an offense which carries a maximum sentence of life. *See* 21 U.S.C.A. § 841(b)(1)(A). Because Joseph was sentenced under the maximum statutory term for his offense, *Apprendi* is inapplicable. *United States v. Kinter*, 235 F.3d 192 (4th Cir. 2000), *cert. denied*, ___ U.S. ___, 69 U.S.L.W. 3618 (U.S. Mar. 19, 2001) (No. 00-8591).

## IX.

We have examined the entire record in this case in accordance with the requirements of *Anders* and find no meritorious issues for appeal. This court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client.

We affirm Appellants' convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*